# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ÁNGEL ALEJANDRO HEREDIA-MONS, *et al.*, on behalf of himself and others similarly situated,<br><br>      *Plaintiffs,*<br><br>      *v.*<br><br>KEVIN McALEENAN, Acting Secretary of the Dep't of Homeland Security, in his official capacity, *et al.*,<br><br>      *Defendants.* | Civil Action No. 1:19-cv-01593(JEB) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

Melissa Crow (D.C. Bar No. 453487)
Luz Virginia López*
**SOUTHERN POVERTY LAW CENTER**
1101 17th St., NW, Suite 750
Washington, DC 20036
Tel: (202) 355-4471
melissa.crow@splcenter.org
luz.lopez@splcenter.org

Mary Bauer*
**SOUTHERN POVERTY LAW CENTER**
1000 Preston Avenue
Charlottesville, VA 22903
Tel: (470) 606-9307
mary.bauer@splcenter.org

Laura Rivera*
**SOUTHERN POVERTY LAW CENTER**
150 E. Ponce de Leon Ave., Ste. 340
Decatur, GA 30030
Tel: (404) 521-6700
laura.rivera@splcenter.org

*Attorneys for Plaintiffs*
* Admitted pro hac vice

Katie Schwartzmann*
Bruce Hamilton*
**AMERICAN CIVIL LIBERTIES UNION OF LOUISIANA FOUNDATION**
P.O. Box 56157
New Orleans, LA 70156
Tel: (504) 522-0628
kschwartzmann@laaclu.org
bhamilton@laaclu.org

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………...……………………1

FACTUAL BACKGROUND……………………………………………………………… 2

LEGAL STANDARD……..………………………………………………………………6

ARGUMENT……………………………………………………………………..….6

I.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

       A.     The Proposed Class Satisfies the Numerosity Requirement……………………6, 7

       B.     The Proposed Class Satisfies the Commonality Requirement……………………9

       C.     The Proposed Class Satisfies the Typicality Requirement………………………11

       D.     The Proposed Class Satisfies the Adequacy Requirement………...……………13

II.    THE PROPOSED CLASS IS ADEQUATELY DEFINED FOR CERTIFICATION…..14

III.   THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(2)…15

IV.    THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS
       COUNSEL…………………………………………………………………………16

CONCLUSION …………………………………………………………………………17

i

## TABLE OF AUTHORITIES

**Cases**

*Abdi v. Duke,*
    No. 1:17-CV-0721 EAW, 2017 WL 6507248 (W.D.N.Y. Dec. 19, 2017) ...........2, 10, 16

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ......................................................................................................6

*Barnes v. District of Columbia,*
    242 F.R.D. 113 (D.D.C. 2007) .................................................................................. 14

*Brewer v. Lynch,*
    2015 WL 13604257 (D.D.C. Sept. 30, 2015) .................................................................15

*Bynum v. Dist. of Columbia,*
    214 F.R.D. 27 (D.D.C. 2003) ................................................7, 8, 10, 11, 13, 15

*Coleman v. Dist. of Columbia,*
    306 F.R.D. 68 (D.D.C. 2015) ...............................................................................7

*Damus v. Nielsen,*
    313 F. Supp. 3d 317 (D.D.C. 2018) ...............................................2, 4, 11, 16

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.,*
    239 F.R.D. 9 (D.D.C. 2006) ..............................................................................7, 8

*DL v. Dist. Of Columbia,*
    302 F.R.D. 1 (D.D.C. 2013) ...........................................................................7, 9, 14

*DL v. Dist. of Columbia,*
    713 F.3d 120 (D.C. Cir. 2013) .........................................................................9, 10

*Feinman v. F.B.I.,*
    269 F.R.D. 44 (D.D.C. 2010) ...........................................................................12

*Johnson v. Dist. of Columbia,*
    248 F.R.D. 46 (D.D.C. 2008) ............................................. 7, 9, 11, 13, 14, 16

*Pigford v. Glickman,*
    182 F.R.D. 341 (D.D.C. 1998) ..........................................................................14

*R.I.L-R. v. Johnson,*
    80 F. Supp. 3d 164 (D.D.C. 2015) .....................................................11, 15, 16

*Richards v. Delta Air Lines, Inc.*,
    453 F.3d 525 (D.C. Cir. 2006) ....................................................................6

*Richardson v. L'Oreal USA, Inc.*,
    991 F. Supp. 2d 181 (D.D.C. 2013) ..........................................................12

*Taylor v. Dist. of Columbia Water & Sewer Auth.*,
    241 F.R.D. 33 (D.D.C. 2007) ..................................................................9, 15

*Thorpe v. District of Columbia*,
    303 F.R.D. 120 (D.D.C. 2014) ...............................................................14, 15

*Twelve John Does v. Dist. of Columbia*,
    117 F.3d 571 (D.C. Cir. 1997) ..................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................6, 10

**Statutes**

8 U.S.C. § 1158 .............................................................................................6

8 U.S.C. § 1182(d)(5) ....................................................................................4

8 U.S.C. § 1225(b)(1)(B) ......................................................................2, 3, 6

**Other Authorities**

8 C.F.R. § 1.2 .................................................................................................6

8 C.F.R. § 208.2(b) ........................................................................................3

8 C.F.R. § 208.30 ...........................................................................................3

8 C.F.R. § 208.31 ...........................................................................................6

8 C.F.R. § 212.5 .............................................................................................4

Fed. R. Civ. P. 23(a)(1) .........................................................................6, 7, 9

Fed. R. Civ. P. 23(a)(2) .........................................................................9, 11

Fed. R. Civ. P. 23(a)(3) .......................................................................11, 13

Fed. R. Civ. P. 23(a)(4) ....................................................................................................13

Fed. R. Civ. P. 23(b)(2).........................................................................................6, 15, 16

Fed. R. Civ. P. 23(g)(1)...............................................................................................16

Memorandum from John Kelly, Implementing the President's Border Security and Immigration

Enforcement Improvements Policies (Feb. 20, 2017),

https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Implementi ng-the-Presidents-

Border-Security-Immigration-Enforcement-ImprovementPolicies.pdf ………...........................4

U.S. ICE, Directive No. 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of

Persecution or Torture (Dec. 8, 2009) ....................................................................3, 4

## INTRODUCTION

Plaintiffs file this class action to challenge the policy of the New Orleans Field Office of U.S. Immigration and Customs Enforcement ("ICE") to categorically deny release from custody to asylum seekers who have shown a credible fear of persecution while their cases are pending.

The categorical denial of release on parole contravenes a policy directive requiring ICE officers to release on parole asylum seekers who present neither a flight risk nor a danger to the community. New Orleans ICE Field Office's no-parole policy also violates the Immigration and Nationality Act ("INA") and its implementing regulations and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Plaintiffs seek a declaration that the policy is unlawful and an injunction requiring an individualized parole determination for each class member to determine whether he or she poses a flight risk or a danger to the community that justifies his or her detention.

Pursuant to Federal Rule of Civil Procedure 23, the named Plaintiffs seek certification of the class set forth below on behalf of all others who are similarly situated.

All arriving asylum seekers who:

a.  are found to have a credible fear of persecution or torture;
b.  who are or will be detained by U.S. Immigration and Customs Enforcement;
c.  after having been denied parole under the authority of the New Orleans ICE Field Office.

Plaintiffs' proposed class satisfies all the requirements of Rule 23(a) and 23(b)(2). With hundreds of class members, the class is sufficiently numerous. The New Orleans ICE Field Office subjects all class members to a common no-parole policy, regardless of where they are detained. Class representatives are subject to the same policy as all class members, and are therefore typical of the class. Class representatives and their experienced counsel will fairly and adequately represent the class. The class is adequately defined for certification. And the New Orleans ICE Field Office has acted on grounds generally applicable to the class through its no-parole policy,

such that an injunction and declaration with respect to the whole class is appropriate. This and other courts have recently certified or provisionally certified similar classes of asylum seekers with credible fear to whom ICE has denied parole. *See Damus v. Nielsen*, 313 F. Supp. 3d 317, 322 (D.D.C. 2018) (provisionally certifying class); *Abdi v. Duke*, No. 1:17-cv-0721 EAW, 2017 WL 6507248 (W.D.N.Y. Dec. 19, 2017). This Court similarly should certify the proposed class and appoint Plaintiffs' counsel as class counsel.

## FACTUAL BACKGROUND

Plaintiffs are eleven[1] asylum seekers who requested asylum upon arriving at a port of entry to the United States and who are now detained by ICE, under the authority of the New Orleans ICE Field Office). *See* Declaration of Ángel Alejandro Heredia Mons ("Heredia Mons Decl.." attached hereto as Exh. 1) ¶¶ 4, 13; Declaration of Dayana Mena López ("Mena López Decl.," attached hereto as Exh. 2) ¶¶ 4, 12; Declaration of Y.A.L. ("Y.A.L. Decl.," attached hereto as Exh. 3) ¶¶ 4, 11; Declaration of J.M.R. ("J.M.R. Decl.," attached hereto as Exh. 4) ¶¶ 4, 18; Declaration of P.S.P. ("P.S.P. Decl.," attached hereto as Exh. 5) ¶¶ 4, 17; Declaration of R.O.P. ("R.O.P. Decl.," attached hereto as Exh. 6) ¶¶ 4, 12; Declaration of Adrián Toledo Flores ("Toledo Flores Decl.," attached hereto as Exh. 7) ¶¶ 4, 10; Declaration of Douglas Enrique Puche Moreno ("Puche Moreno Decl.," attached hereto as Exh. 8) ¶¶ 4, 11; Declaration of M.R.M.H. ("M.R.M.H. Decl.," attached hereto as Exh. 9) ¶¶ 4, 10, 11; Declaration of F.J.B.H. ("F.J.B.H. Decl.," attached hereto as Exh. 10) ¶¶ 4, 12; and Declaration of Miguel Angel Girón Martínez ("Girón Martínez Decl.," attached hereto as Exh. 11) ¶¶ 4, 14.

Each Plaintiff was interviewed by an asylum officer pursuant to 8 U.S.C. § 1225(b)(1)(B), and ultimately determined to have a credible fear of persecution or torture. *See* Heredia Mons Decl.

---

[1] Plaintiff Roland Nchango Tumenta was granted asylum; he is no longer a Plaintiff in this case.

¶¶ 14-17; Mena López Decl. ¶ 15; Y.A.L. Decl. ¶ 12; J.M.R. Decl. ¶ 19; P.S.P. Decl. ¶ 18; R.O.P. Decl. ¶¶ 14-15; Toledo Flores Decl. ¶ 12; Puche Moreno Decl. ¶¶ 13-14; M.R.M.H. Decl. ¶ 12; F.J.B.H. Decl. ¶ 15; Girón Martínez Decl. ¶¶ 14-15. That means "there is a significant possibility, taking into account the credibility of the statements made by [the Plaintiff] in support of the [Plaintiff]'s claim[s] and such other facts as are known to the officer, that [the Plaintiff] could establish eligibility for asylum." 8 U.S.C. § 1225(b)(1)(B)(v); *see also* 8 C.F.R. § 208.30 (describing credible fear interview and determination process). Each Plaintiff was thus entitled to pursue an asylum claim in removal proceedings before an immigration judge. *See* 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.2(b).

Although none of the Plaintiff asylum seekers is a flight risk or dangerous, and there is no question as to their identity, all have been detained and denied parole by the New Orleans ICE Field Office. *See* Heredia Mons Decl. ¶ 20; Mena López Decl. ¶ 21; Y.A.L. Decl. ¶ 17; J.M.R. Decl. ¶¶ 21-24; P.S.P. Decl. ¶¶ 21-22; R.O.P. Decl. ¶ 21; Toledo Flores Decl. ¶¶ 15, 20; Puche Moreno Decl. ¶ 17, 21; M.R.M.H. Decl. ¶ 14, 15, 19, 23, 27, 31; F.J.B.H. Decl. ¶¶ 20, 23; Girón Martínez Decl. ¶¶ 17, 20.

Until recently, ICE, bound by a December 2009 Directive, generally released asylum seekers found to have a credible fear of persecution or torture on parole after ICE agents made case-by-case determinations as to whether asylum seekers posed a flight risk or a danger to the community.  *See* ICE Directive No. 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009) ("Parole Directive"). The Parole Directive provides that "when an arriving alien found to have a credible fear establishes . . . his or her identity" and shows "based on the facts of the individual alien's case... that he or she presents neither a flight risk nor danger to the community, [ICE] should . . . parole the alien on the basis that his or her

continued detention is not in the public interest." Parole Directive ¶ 6.2. In recognizing that detention of asylum seekers who do not pose a flight risk or danger is not in the public interest, the Directive implements the parole statute, which provides that the Secretary of DHS "may . . . in his discretion parole into the United States" "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5.

The Parole Directive has not been expressly superseded or repealed by any subsequent policy directive or rule. To the contrary, government officials have made numerous statements that the Parole Directive remains in effect. A February 2017 memorandum from former DHS Secretary John Kelly states that the Parole Directive "remain[s] in full force and effect" pending the Secretary's "further review and evaluation."[2] Counsel for the government also has represented to the Supreme Court and this Court that the Parole Directive "remains in full force and effect." Supp. Reply Br. for Pets., at 6 n.2, *Jennings v. Rodriguez*, No. 15-1204 (filed Feb. 21, 2017); *Damus*, 313 F. Supp. 3d at 340. In spite of that, in November 2018, the New Orleans ICE Field Office issued a written statement to regional immigration practitioners taking the contradictory position that the Parole Directive was dead letter. *See* Email from New Orleans ICE Field Office to American Immigration Lawyers Association Midsouth Region (attached hereto as Exh. 12).

Like other ICE jurisdictions across the country, the New Orleans ICE Field Office has effectively rescinded the Parole Directive and adopted a de facto policy of detaining all or nearly all arriving asylum seekers with credible fear. In 2016, the New Orleans ICE Field office granted

---

[2] Memorandum from John Kelly, *Implementing the President's Border Security and Immigration Enforcement Improvements Policies*, at 9-10 (Feb. 20, 2017) ("Kelly Memo"), https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Implementing-the-Presidents-Border-Security-Immigration-Enforcement-Improvement-Policies.pdf.

75.86 percent of parole requests.[3] In 2017, the parole grant rate dropped by 54 points to 21.88 percent.[4] In 2018, the parole grant rate plummeted to just two percent, with the New Orleans ICE Field Office granting only two of 130 parole requests.

Beyond the data are the experiences of legal services providers who confirm that the New Orleans ICE Field Office has effectively stopped giving due consideration to parole requests. *See* Declaration of Allyson Page ("Page Decl.") ¶ 10; Declaration of Joseph S. Giardina ("Giardina Decl.") ¶¶ 9, 14; Declaration of Olga Badilla ("Badilla Decl.") ¶¶ 5, 6; Declaration of Helen Boyer ("Boyer Decl.") ¶ 17. These attorneys attest to the wholesale turnabout in the New Orleans ICE Field Office's manner of adjudicating parole requests. *See* Page Decl. ¶¶ 9-10 (noting that previously, "if an arriving asylum seeker had generally met the requirements outlined for release by the 2009 Parole Memorandum, they would be granted parole by the New Orleans ICE ERO Field Office," whereas now, "ICE [] no longer grant[s] detainees parole"); Giardina Decl. ¶ 16; Badilla Decl. ¶¶ 10, 12 (attesting to conversation with ICE agent that left her with impression that "it didn't matter" whether or not she submitted documents in support of parole application); Boyer Decl. ¶¶ 10, 17. The practitioners also have heard directly from ICE officers in the New Orleans ICE Field Office that "there [is] a directive to blanket deny paroles in Louisiana. *See* Giardina Decl. ¶ 16 (attesting to conversation with ICE agent who explained denial of parole by saying "it was not his call there was a directive to blanket deny paroles in Louisiana"); *id.* at ¶ 17 (attesting to separate conversation where ICE agent explained "it would be 99% impossible to demonstrate to him that a detainee was not a flight risk or a danger in order for him to grant parole").

---

[3] Plaintiffs expect to supplement the record with the relevant data in short order.
[4] *Id.*

In light of this, Plaintiffs move to certify a class consisting of: (1) all arriving asylum seekers[5]; (2) who are found to have a credible fear of persecution or torture[6]; and (3) who are or will be detained by ICE; (4) after having been denied parole under the authority of the New Orleans ICE Field Office.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The requirements are two-fold. Under Rule 23(a), Plaintiffs must establish numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). This "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).   Under Rule 23(b), Plaintiffs must establish one of its three subsections. *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006). In this case, Plaintiffs argue that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## ARGUMENT

## I.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

### A.     The Proposed Class Satisfies the Numerosity Requirement.

The proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no specific threshold that must be surpassed in order to satisfy the

---

[5] *See* 8 C.F.R. § 1.2.
[6] *See* 8 U.S.C. §§ 1225(b)(1)(B)(v), 1158; 8 C.F.R. § 208.31.

numerosity requirement; rather, each decision turns on the particularized circumstances of the case." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 25 (D.D.C. 2006).   In this Court, proposed classes of at least 40 members have met the numerosity requirement absent exceptional circumstances. *See, e.g.*, *Johnson v. Dist. of Columbia*, 248 F.R.D. 46, 52 (D.D.C. 2008); *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003); *Disability Rights Council of Greater Wash.*, 239 F.R.D. at 25.

Rule 23(a)(1) does not require a showing as to the exact number of class members. *See Johnson*, 248 F.R.D. at 53, *Bynum*, 214 F.R.D. at 32. An estimate will suffice so long as it has a reasonable evidentiary basis. *Feinman v. F.B.I.*, 269 F.R.D. 44, 49 (D.D.C. 2010). Courts may "draw reasonable inferences from the facts presented to find the requisite numerosity." *Coleman v. Dist. of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015).

"Demonstrating impracticability of joinder" for purposes of numerosity "does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *DL v. Dist. Of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013) (internal quotation marks and citation omitted), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017). Relevant factors include the "financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

Here, joinder is impractical firstly because of the number of people suffering from the alleged harms. In 2018 alone, the New Orleans ICE Field Office denied 128 requests for parole by asylum seekers who passed their credible fear interviews. Declaration of Sophie Beiers ("Beiers Decl.") ¶ 7. This figure, coupled with evidence of the dramatic expansion of detention bed space under the jurisdiction of the New Orleans ICE Field Office over the last two years, means that at

present, many more asylum seekers with a credible fear have been detained and denied parole pursuant to the blanket no parole policy. As detailed in Plaintiffs' Complaint and supported by news reports, ICE has tripled its capacity to confine people in its custody in Louisiana over the past several months.

A May 2019 report tallied about 2,800 beds across several local Louisiana jails shifted to a new use since 2017—to warehouse migrants for ICE: 1,000 in Richwood, 250 in Bossier, 1,000 in Jackson, and 500 at River.[7] In Mississippi, under the jurisdiction of the New Orleans ICE Field Office, up to 1,300 asylum-seekers may be confined in Tallahatchie, a so-called "asylum processing center."[8] And just this month, local officials announced that the Winn Correctional Center in Winnfield, Louisiana will confine up to 1,500 migrants for ICE.[9] Given this alarming expansion, many more individuals will become class members in the future. These facts alone satisfy numerosity. *See, e.g.*, *Disability Rights Council of Greater Wash.*, 239 F.R.D. at 25; *Bynum*,

---

[7] *See* Bryn Stole, "As fewer inmates fill Louisiana jails, wardens turn to immigration officials to fill bunks, budgets," The Advocate (May 9, 2019), *available at:* https://www.theadvocate.com/new_orleans/news/article_5bda8872-7271-11e9-836a-b76530b7c21c.html. *See also*, KNOE News, "More than a thousand migrant detainees from the border to be housed at the Richwood Correctional Facility," (April 4, 2019), *available at*: https://www.knoe.com/content/news/More-than-a-thousand-migrant-detainees-from-the-border-to-be-housed-at-the-Richwood-Correctional-Facility--508150181.html; Noah Lanard, "Louisiana Decided to Curb Mass Incarceration. Then ICE Showed Up." Mother Jones (May 1, 2019), *available at*: https://www.motherjones.com/politics/2019/05/louisiana-decided-to-curb-mass-incarceration-then-ice-showed-up/.

[8] *See, e.g.,* Noah Lanard, "ICE is Sending Hundreds of Asylum-Seekers to a Private Prison in Mississippi," Mother Jones (Feb. 15, 2019) *available at:* https://www.motherjones.com/politics/2019/02/ice-is-sending-hundreds-of-asylum-seekers-to-a-private-prison-in-mississippi/.

[9] *See* Juanice Gray, "Immigrant detainees arrive," Natchitoches Times (June 14, 2019), *available at:* https://www.natchitochestimes.com/2019/06/14/immigrant-detainees-arrive/; Noah Lanard, "ICE Is Sending Asylum-Seekers to the Private Prison Where Mother Jones Exposed Abuse," (June 11, 2019), *available at*: https://www.motherjones.com/politics/2019/06/ice-is-sending-asylum-seekers-to-the-private-prison-where-mother-jones-exposed-abuse/.

214 F.R.D. at 32; *Johnson*, 248 F.R.D. at 52; *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007).

Many other reasons make joinder impracticable in this case. Joinder is inherently impracticable where, as here, "the class seeks prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join." *DL*, 302 F.R.D. at 11. Most putative class members have limited financial resources, speak little to no English, and know little to nothing about U.S. immigration law. *See* Page Decl. ¶¶ 14-15 ("In my experience, parole denial notices are written in English even when the recipients do not speak or read English."); Badilla Decl. ¶ 4 ("It was also difficult for us to confirm whether the immigrants' parole requests had in fact been denied because none of the immigrants in the group of 17 we were assisting could read or write English"); *id.* at ¶ 12 (noting parole clients' need for *pro bono* asylum lawyers, and difficulty in navigating legal system); Giardina Decl. ¶ 13. Taken together, these factors create insurmountable obstacles for detained asylum seekers to institute individual suits in defense of the rights asserted in this case.

The proposed class thus satisfies the numerosity requirement of Rule 23(a)(1).

**B.     The Proposed Class Satisfies the Commonality Requirement.**

Rule 23(a)(2), which requires "questions of law or fact common to the class," is likewise satisfied. The key to commonality is that class members' claims must depend on "a common contention [] capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores*, 564 U.S. at 350.

Commonality is satisfied where there is a single or "uniform policy or practice that affects all class members." *DL v. Dist. of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013). "[S]o long as a

single aspect or feature of the claim is common to all proposed class members," such as a generally applicable policy or practice, "factual variations among the class members will not defeat the commonality requirement." *Bynum*, 214 F.R.D. at 33. "Even a single common question will" support a commonality finding. *Wal-Mart Stores*, 564 U.S. at 359 (internal alternations and citations omitted). For example, a proposed class consisting of illegally detained persons satisfies the commonality requirement even if the class members were detained for different reasons or amounts of time. *See Bynum*, 214 F.R.D. at 34.

The proposed class here satisfies these requirements. All class members are or will be detained after having been found to have a credible fear of persecution in their home countries. All have been detained pursuant to a "uniform policy or practice" of denying them parole without individualized reviews of flight risk or dangerousness. *See DL*, 713 F.3d at 128. The class members all challenge the legality of the government's categorical denial of parole on the same grounds. They all allege that categorical denial of parole violates the INA and its implementing regulations as well as the U.S. Constitution, and that it is an arbitrary and capricious and unlawful departure from ICE's own Parole Directive. A determination of whether the blanket no parole policy is unlawful on one or more of these grounds will resolve the issues the class is facing "in one stroke." *Wal–Mart Stores*, 564 U.S. at 350; *see also Abdi*, 2017 WL 6507248, at *6 (proposed class satisfies commonality because "this Court's conclusion that the Buffalo Federal Detention Facility is violating the [Parole] Directive would resolve the . . . claims of all members of the proposed class").

Plaintiffs have statistical evidence that the Policy has been applied to all class members, each of whom has been (or will be) denied parole pursuant to the Policy. In the New Orleans ICE Field Office, parole grant rates have dropped precipitously. While in past years, the New Orleans

ICE Field Office paroled nearly all asylum seekers who were found to have a credible fear pursuant to the Parole Directive,[10] in 2018, the New Orleans ICE Field Office *denied* 98.5 percent of the same group's parole requests pursuant to the Policy. Beiers Decl. ¶ 7. Commonality is satisfied under these circumstances. *See Damus*, 313 F. Supp. 3d at 335; *R.I.L-R.*, 80 F. Supp. 3d at 182 (commonality satisfied where plaintiffs "have provided ample evidence that nearly every [class member]" has been detained pursuant to policy). The proposed class therefore satisfies the commonality requirement of Rule 23(a)(2).

### C.     The Proposed Class Satisfies the Typicality Requirement.

Plaintiffs' claims also are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Typicality means that the representative plaintiffs must "possess the same interest and suffer the same injury" as the other class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks and citations omitted). The typicality and requirements often overlap because both "serve as guideposts" to determine whether a class action is practical and whether the representatives' claims are sufficiently interrelated with class claims to "fairly and adequately protect[]" absent class members. *Id.* at 157 n.13.

Courts liberally construe the typicality requirement, such that factual variations between the representative plaintiffs and the absent class members "do not negate typicality." *Bynum*, 214 F.R.D. at 34. "Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Id.* at 35. *See also Johnson*, 248 F.R.D. at 53 (internal quotation marks and citation omitted).

---

[10] *See* note 3, *supra*.

Here, Plaintiffs, the proposed class representatives, have "suffered injuries in the same general fashion as absent class members." *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013) (internal quotation marks and citation omitted). Like the other putative class members, Plaintiffs, the proposed class representatives, are asylum seekers detained under the authority of the New Orleans ICE Field Office. *See* Heredia Mons Decl. ¶¶ 4-13; Mena López Decl. ¶¶ 4, 12; Y.A.L. Decl. ¶¶ 4, 11; J.M.R. Decl. ¶¶ 4, 18; P.S.P. Decl. ¶¶ 4, 17; R.O.P. Decl. ¶¶ 4, 12; Toledo Flores Decl. ¶¶ 4, 10; Puche Moreno Decl. ¶¶ 4, 11; M.R.M.H. Decl. ¶¶ 4, 10, 11; F.J.B.H. Decl. ¶¶ 4, 12; Girón Martínez Decl. ¶¶ 4-14. Like the putative class, Plaintiffs have been interviewed by asylum officers and found to have a credible fear of persecution. *See* Heredia Mons Decl. ¶¶ 14-17; Mena López Decl. ¶ 15; Y.A.L. Decl. ¶ 12; J.M.R. Decl. ¶ 19; P.S.P. Decl. ¶ 18; R.O.P. Decl. ¶¶ 14-15; Toledo Flores Decl. ¶ 12; Puche Moreno Decl. ¶¶ 13-14; M.R.M.H. Decl. ¶ 12; F.J.B.H. Decl. ¶ 15; Girón Martínez Decl. ¶¶ 14-15.

Similarly, the New Orleans ICE Field Office has denied them parole pursuant to its blanket no-parole policy. *See* Heredia Mons Decl. ¶ 20; Mena López Decl. ¶ 21; Y.A.L. Decl. ¶ 17; J.M.R. Decl. ¶¶ 21-24; P.S.P. Decl. ¶¶ 21-22; R.O.P. Decl. ¶ 21; Toledo Flores Decl. ¶¶ 15, 20; Puche Moreno Decl. ¶ 17, 21; M.R.M.H. Decl. ¶¶ 14, 15, 19, 23, 27, 31; F.J.B.H. Decl. ¶¶ 20, 23; Girón Martínez Decl. ¶¶ 17, 20. The manner in which ICE applied the no-parole policy to Plaintiffs is typical of the way ICE has done so to other putative class members: by failing to grant them parole interviews, imposing deadlines that were unreasonable if not impossible to meet, and issuing them rote denial forms with check boxes marked and no meaningful explanation of the reasons for the denial. *See* Heredia Mons Decl. ¶¶ 18-22; Mena López Decl. ¶¶ 16, 18-20; Y.A.L. Decl. ¶¶ 14, 16-17; J.M.R. Decl. ¶¶ 19-23; P.S.P. Decl. ¶¶ 21-22; R.O.P. Decl. ¶¶ 18-23; Toledo Flores Decl. ¶¶

15-19, 20-21; Puche Moreno Decl. ¶¶ 16-19, 21; M.R.M.H. Decl. ¶¶ 15-17, 19-20; F.J.B.H. Decl.
¶¶ 19-24; Girón Martínez Decl. ¶¶ 16-20.

Plaintiffs' claims therefore "arise from the same course of conduct that gives rise to the
other class members' claims," *Bynum*, 214 F.R.D. at 35, and are based on the same legal theory as
all class members. Accordingly, the proposed class representatives' claims are "typical" under
Rule 23(a)(3).

### D. The Proposed Class Satisfies the Adequacy Requirement.

The proposed class also satisfies Rule 23(a)(4)'s requirement that "the representative
parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To
satisfy this requirement, Plaintiffs must show (1) that there is no conflict of interest between the
named members and the rest of the class, and (2) that counsel for the class is competent to represent
the class. *See Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575-76 (D.C. Cir. 1997);
*Johnson*, 248 F.R.D. at 53-54.

No conflict exists between the proposed class representatives and the other class members.
The class representatives and the remaining class members have suffered the same injury: they
have been denied individualized custody determinations due to the blanket no-parole policy. The
class representatives and the remaining class members assert the same legal claims. And they all
would benefit from the same declaratory and injunctive relief. Because their interests in this
litigation are aligned, there is no conflict of interest between the named and unnamed class
members.

In addition, proposed class counsel are competent to represent the class. Plaintiffs' counsel
has devoted, and will continue to devote, substantial time and resources to the prosecution of this
action. *See* Declaration of Mary Bauer ("Bauer Decl.") ¶¶ 5, 6; Declaration of Katie Schwartzmann

("Schwartzmann Decl.") ¶¶ 4-6. They have extensive experience with civil rights and class action litigation. *See* Bauer Decl. ¶ 5; Schwartzmann Decl. ¶¶ 3, 5. Plaintiffs' counsel are therefore well qualified to prosecute this action.

## II.    THE PROPOSED CLASS IS ADEQUATELY DEFINED FOR CERTIFICATION.

"It is axiomatic that for a class action to be certified a 'class' must exist." *Johnson*, 248 F.R.D. at 52 (internal quotation marks and citations omitted). This "common-sense requirement" is not "a particularly stringent test, but plaintiffs must at least be able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation." *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998) (internal quotation marks and citation omitted). The requirement "is designed primarily to help the trial court manage the class" such that it is not "impossible to determine who is or is not a member of the class." *Id.* at 346. But beyond the "general demarcations of the class of individuals who are being harmed," *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014) (internal quotation marks and citations omitted), "precise ascertainability . . . is not required in cases such as this where only injunctive relief is sought." *DL*, 302 F.R.D. at 17.

Here, four objective criteria easily define the outlines of class membership at the outset of the litigation. Class members (1) are arriving asylum seekers; (2) who receive a positive credible fear determination; and (3) are or will be detained by ICE; (4) after having been denied parole by the New Orleans ICE Field Office. These four criteria allow for objective identification of both current class members and future class members. *See, e.g.*, *DL*, 302 F.R.D. at 10-11 (certifying class of present and "future class members" who will enter preschool with disabilities, but "whose identities are currently unknown"); *Barnes v. District of Columbia*, 242 F.R.D. 113, 120 (D.D.C. 2007) (certifying class of current and future prisoners detained beyond their date of release). ICE's

monthly reports of its parole decisions regarding class members will further facilitate straightforward identification of all current and future class members and effective management of the class. *Cf. Brewer v. Lynch*, 2015 WL 13604257, at *7 (D.D.C. Sept. 30, 2015) (class adequately defined when "identifying the class members . . . would take little more than a perusal of the [government's] records"). Accordingly, the proposed class is adequately defined.

## III.   THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(2).

The proposed class also satisfies Rule 23(b)(2), which requires that "[t]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Courts in this District have interpreted Rule 23(b)(2) to impose two requirements: "(1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum*, 214 F.R.D. at 37; *R.I.L-R.*, 80 F. Supp. 3d at 182.

To satisfy Rule 23(b)(2), "it is enough to show that a defendant has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity." *Bynum*, 214 F.R.D. at 37 (internal quotation marks and citation omitted); *see also R.I.L-R.*, 80 F. Supp. 3d at 182 (requirements of Rule 23(b)(2) met where class "challenges a policy generally applicable to all class members") (internal quotation marks omitted); *Thorpe v. D.C.*, 303 F.R.D. 120, 151 (D.D.C. 2014) (proposed class alleging "systemic deficiencies in the District's system of transition assistance and that those deficiencies appear to be affecting the class" satisfied Rule 23(b)(2)); *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. at 47 (proposed class alleging pattern or practice of discrimination satisfied Rule 23(b)(2)).

15

Here, all class members are being detained without individualized parole determinations pursuant to the New Orleans ICE Field Office's blanket no-parole policy. Class members have suffered a consistent harm, namely the application of this unlawful policy. All class members seek the same declaratory and injunctive relief requiring that parole determinations be made in compliance with the law. In other words, Plaintiffs and other putative class members challenge a Policy generally applicable to the class, and seek declaratory and injunctive relief that will benefit the class as a whole. This is just the sort of claim that satisfies Rule 23(b)(2). *See, e.g.*, *Damus v. Nielsen*, 313 F. Supp. 3d 317, 335 (D.D.C. 2018) (granting provisional class certification in challenge to Parole Directive); *R.I.L-R.*, 80 F. Supp. 3d at 182 (lawsuit "seek[ing] declaratory and injunctive relief invalidating consideration of [deterrence] factor and enjoining ICE from applying the policy to deny release" "challenges a policy 'generally applicable' to all class members" and thus satisfies Rule 23(b)(2)); *Abdi*, 2017 WL 6507248, at *10 (Rule 23(b)(2) satisfied because "injunctive relief requiring Respondents to conform to the strictures of the [Parole] Directive will be applicable to all proposed class members"). Section 23(b)(2) is likewise satisfied here.

## IV.   THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS COUNSEL.

Rule 23(g)(1) requires a court that certifies a class to appoint class counsel. Fed. R. Civ. P. 23(g)(1). In appointing class counsel, a court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.* The court also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *Johnson*, 248 F.R.D. at 58.

For the same reasons that Plaintiffs' counsel satisfies the adequacy requirement, this Court should designate Plaintiffs' counsel as class counsel. *See* Bauer Decl. ¶¶ 2-6; Schwartzmann Decl. ¶¶ 3-6. For all these reasons, the Court should designate Plaintiffs' counsel as class counsel.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted. Plaintiffs respectfully request that the Court certify the proposed class, consisting of (1) all arriving asylum seekers, (2) who are found to have a credible fear of persecution or torture, and (3) who are or will be detained by ICE, (4) after having been denied parole under the authority of the New Orleans ICE Field Office; and appoint Plaintiffs' counsel as class counsel.

Dated: June 28, 2019

Respectfully submitted,

____//s// Melissa Crow_____

Melissa Crow (D.C. Bar No. 453487)
Luz Virginia López*
**SOUTHERN POVERTY LAW CENTER**
1101 17th St., NW, Suite 750
Washington, DC 20036
Tel: (202) 355-4471
melissa.crow@splcenter.org
luz.lopez@splcenter.org

Katie Schwartzmann*
Bruce Hamilton*
**AMERICAN CIVIL LIBERTIES
UNION OF LOUISIANA
FOUNDATION**
P.O. Box 56157
New Orleans, LA 70156
Tel: (504) 522-0628
kschwartzmann@laaclu.org
bhamilton@laaclu.org

Mary Bauer*
**SOUTHERN POVERTY LAW CENTER**
1000 Preston Avenue
Charlottesville, VA 22903
Tel: (470) 606-9307
mary.bauer@splcenter.org

Laura Rivera*
**SOUTHERN POVERTY LAW CENTER**
150 E. Ponce de Leon Ave., Ste. 340
Decatur, GA 30030
Tel: (404) 521-6700
laura.rivera@splcenter.org

*Attorneys for Plaintiffs*
*\*Admitted pro hac vice*

17