# EXHIBIT

# 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

Ángel Alejandro Heredia Mons et al.

     *Plaintiffs,*

     v.

Kevin K. McALEENAN et al.

     *Defendants/Respondents.*

     Civ. No.: 1:19-cv-01593

---

### DECLARATION OF Y.A.L.

I, Y.A.L., declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1.    My initials are Y.A.L. and I was born in 1968 in Pinar del Río, Cuba.

2.    I am a native Spanish speaker. I do not speak English.

3.    I have been in immigration detention and separated from my family since October 10, 2018—over eight months—while seeking asylum.

4.    I am currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Pine Prairie ICE Processing Center in Pine Prairie, Louisiana.

5.    I was forced to flee Cuba after Cuban police beat me and labeled me a counter-Revolutionary due to my political opinion. My family and I have always disagreed with the power-hungry Cuban government. The Cuban Revolution has forced countless Cuban people to devote their lives to a cause that has left them to starve. Rather than buy into this farce, I refrained from politics. I did not vote, participate in rallies and marches, or attend local Committee for the Defense of the Revolution ("CDR") meetings. Instead of being politically involved, I focused on taking care of my sick father and raising two children with my wife.

6.     Cuban authorities became increasingly aware of my opposition to the regime. In May 2016, police detained me and kept me locked in a cell inside a police station for two days. Police interrogated me and threatened me with disappearance. Two officials kicked me in the stomach and back and hit me with batons. They called me a counter-Revolutionary and a "gusano," which means worm in Spanish. In Cuba, this is a common word used to slur political dissidents.

7.     Once they released me, they told me I had to start attending the CDR meetings. When I refused, the government started sending me official citations. This went on for many months. Some threatened jail time if I did not attend future meetings; one commanded me to appear at a local police station. I didn't go, fearing the government would disappear me if I did. Then, in April 2017 the government fined me for not reporting to the police station as commanded.

8.     Several months later, around August 2018, two plainclothes police officers detained me as I was walking home. They said they had had enough of my not attending meetings, that they were going to make me disappear, and that I would not see the light of day again. These officers beat my body with batons and pushed me around. They said they would give me one more chance to conform to the Revolutionary program, but there would not be a third chance. After a day and a half, they released me.

9.     Once they released me, I feared I was in real danger of indefinite imprisonment or worse. In Cuba, the laws allow authorities to punish people even before they commit any crimes, simply because the powers that be think their political beliefs make them dangerous. After the government gives warns you, they can send you to jails and make you do hard labor. I had no plans to begin participating in CDR meetings or other political activities. I had seen two friends go to jail for years due to similar offenses, so I knew I had no choice but to flee or otherwise face imprisonment.

10.     On September 30, 2018 I boarded a plane to Mexico and fled Cuba. I brought my identification and medicines to treat my condition, gout. But I had little else.

11.     In early October 2018, I reached Mexico's border with the United States at Matamoros. For a week, I waited on the bridge for a chance to seek asylum. On October 10, 2018, I was allowed to cross the port of entry into Brownsville, Texas and ask for asylum. They took my identification, but let me keep my medicines. I spent a day or so in a "hielera" at the border before being transferred to the Tallahatchie County Correctional Facility in Tutwiler, Mississippi.

12.     I waited weeks for my asylum interview. On November 2, 2018, an asylum officer interviewed me by phone. Some time after, ICE gave me my positive credible fear results in English and Spanish, as well as some other papers in English that I did not understand.

13.     Around November 22, 2018, I was transferred from Tallahatchie to Pine Prairie ICE Processing Center in Pine Prairie, Louisiana. At Tallahatchie, I had gotten to keep my medicines, but when I got to Pine Prairie, they took them, even though I told them I needed them for my gout. The foods they gave me were no good for my gout, either. For more than ten years, I had managed to keep myself pretty healthy by limiting fat, sugar, and spicy foods in my diet, and taking the medicine I needed. In detention, I lost my control over these choices.

14.     While at Pine Prairie, I learned I had the right to seek release on parole. Thanks to my attorney, I finally understood what some of the paperwork I had been given in English meant: I had a date for a parole interview, I could submit documents in support of parole, and I had a due date to submit them. By the time I realized what that paperwork said, though, both the dates had passed. Not that it would have made any difference. Even though the parole interview had been scheduled for November 17, 2018, I never got one. And the document due date—October 18, 2018—would have been impossible to meet. That date was weeks before I'd even had my credible

fear interview, so how could I possibly have qualified for parole or even known about it then? I was so frustrated, and feeling worse by the day.

15.     Within weeks of arriving at Pine Prairie, I began to feel joint pain in my fingers, ankles, and knees. I would send requests to go to the medical unit, but they would be ignored until I insisted. Around mid-December 2018, I fell into a crisis. The swelling and pain in my joints was so bad I cried. I couldn't walk. They had tried putting me in isolation in the medical unit, but being isolated is the worst thing that can happen to me. I need help to walk, to shower, to use the bathroom, and in the general population my friends can help me. It got so bad I had to start using a wheelchair to get around.

16.     On January 3, 2019, I submitted a parole request through a lawyer with help from my wife, a permanent resident. The request asked for my release because of my serious illness and had plenty of documents to support the parole requirements, including: a letter from a Cuban hospital with my gout diagnosis and treatment plan; a letter from my wife pledging to sponsor me; a letter from my wife's sister, a U.S. citizen, also pledging to sponsor me; and information about my two step-children, permanent residents. U.S. immigration officials had already confiscated my identity documents.

17.     Not long after, my attorney received a parole denial letter dated January 10, 2019. ICE said I was a flight risk. It was a slap in the face to be called a flight risk when I have every reason to show up for my hearings: my wife, a permanent resident, is here, and so are my two step-children, who I have raised like they are my own flesh and blood. I don't think they really looked at my materials. What else could have possibly convinced them? After I got the news of my parole denial, I became hopeless and afraid.

18.     Being confined against my will for months kept me from finding a lawyer for my asylum hearing, so I was forced to represent myself pro se. I did not know how to prepare for court, what evidence to bring, or how to present my claim. Without a lawyer, I had no fair chance to present my claims and have them thoroughly considered by the immigration judge. The immigration judge rushed me through the hearing and denied me asylum. Now I am forced to remain in detention while I appeal the judge's decision.

19.     Because I've been detained, I have been unable to support my wife and my step-children. My wife is now a single mom, working double time to provide for our family. Recently, I missed my stepdaughter's high school graduation. My relationship with my family consists of phone and video calls that have cost my family thousands of dollars.

20.     Denial of proper medical care in detention has ruined my health. When I first came to the United States I walked on my own two feet. I knew how to care for my gout and make healthy choices. I took medication daily, and I managed my diet. I avoided grease, sugar, and spicy foods, and generally ate rice, fish, and some lean chicken. This helped me stay healthy and control my pain.

21.     In Tallahatchie, I struggled with bad food options, but at least I had my own medication. In Pine Prairie, the food is spicy and greasy. Eating it makes me feel terrible. I now avoid breakfast altogether because not eating it is better than the alternative. Many times, I have asked medical staff, the warden, and his assistant for a special diet, only to be denied. I have lost more than sixty pounds since being detained.  I am confined to a wheel chair and have become practically immobile.

22.     The medical treatment in detention has been a nightmare. After my crisis in December 2018, guards took me to an outside clinic where the providers performed a procedure.

They used a large needle to inject my wrist with fluid. It was so painful; I never want to go through that pain again. They took x-rays, yet no one ever told me the results. For the past two months, no one has measured my uric acid levels, a key marker for gout patients. My pain has become unbearable and I can't do basic things like use the toilet or bathe without help. I fell in the shower, yet no one has given me a special seat to keep that from happening.  Instead, I rely on the kindness of my detained friends to help me. It is humiliating having to depend on others for even the most intimate tasks. I'm in a constant state of anxiety, worrying about what could happen if my condition continues to worsen. What could happen to my kidneys? Will it get so bad that I need dialysis? Even if I win release, will I ever be able to recuperate?

23.     Recently, I was diagnosed with pneumonia. For days, I requested medical attention. I complained of chest and back pain and was coughing up blood, only to be told that there were no doctors. I felt weak and had trouble breathing. I did eventually get medicine and started to feel better, but I still have a cough, back pain, and trouble breathing.

24.     Denied parole despite my physical condition and my family in Florida, all I can do is pray for a miracle. I know that the only way I can be safe and well is to be granted release from detention and the opportunity to stay here in the United States. If deported back to Cuba, I face imprisonment or worse.

25.     This declaration was interpreted to me in Spanish and I agree with its contents.

26.     Attached as Exhibit A is a true and correct copy of my Notice to Appear.

27.     Attached as Exhibit B is a true and correct copy of my Parole Advisal and Scheduling Notification.

28.     Attached as Exhibit C is a true and correct copy of my parole denial.

29.     Attached as Exhibit D is a true and correct copy of the summary of my medical history from Cuba.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on April 4, 2019 in Pine Prairie, Louisiana.



## CERTIFICATE OF TRANSLATION

I, Laura Rivera, affirm that I am competent to translate from English to Spanish; that I read the preceding declaration to the declarant in Spanish; and that she indicated that she understood the contents thereof before signing.

April 4, 2019,

Laura Rivera

# **EXHIBIT A**

DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO APPEAR

In removal proceedings under section 240 of the Immigration and Nationality Act:

File No.  A ▇▇▇▇▇▇

In the Matter of:

Respondent:   A▇▇ L▇▇, Y▇▇                                           currently residing at:

Tallahatchie County Correctional Facility, 415 U.S. Highway 49 N, Tutwiler, MS 38963

(Number, street, city and ZIP code)                          (Area code and phone number)

[x] You are an arriving alien.
[ ] You are an alien present in the United States who has not been admitted or paroled. You are an applicant for admission.
[ ] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that:

1) You are not a citizen or national of the United States.

2) You are a native of CUBA and a citizen of CUBA;

3) You applied for admission at the Brownsville and Matamoros Bridge, Port of Entry, in Brownsville, Texas, on 10/10/18;

4) You did not then possess or present a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

[x] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[ ] Section 235(b)(1) order was vacated pursuant to: [ ] 8CFR 208.30   [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

LaSalle Service Processing Center, 830 Pinehill Road , Jena, LA 71342

(Complete Address of Immigration Court, including Room Number, if any)

on   TBD           at   TBD           to show why you should not be removed from the United States based on the
        (Date)              (Time)

charge(s) set forth above.        _____        Dusty Clark
                                                                     Supervisory Asylum Officer
                                  (Signature and Title of Issuing Officer)

Date   NOV 1 4 2018        _____
                                   Houston, TX
                              (City and State)

DHS Form I-862 (5/17)          See reverse for Important Information                     Page 1 of 2

**Notice to Respondent**

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United Stated and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855)448-6903.

---

**Request for Prompt Hearing**

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_(Signature of Respondent)_

_(Signature and Title of Immigration Officer)_       Date: **1 ⊢17-1⅞**

---

**Certificate of Service**

This Notice To Appear was served on the respondent by me on **11-17-1⅞**, in the following manner and in compliance with section 239(a)(1) of the Act.

☑ In person    ☐ by certified mail, returned receipt # _____ requested    ☐ by regular mail

☐ Attached is a credible fear worksheet.

☑ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_(Signature of Respondent if Personally Served)_       _(Signature and Title of Officer)_

O92

# **EXHIBIT B**

## PAROLE ADVISAL AND SCHEDULING NOTIFICATION

| | |
|---|---|
| Alien's Claimed Name(s) (including AKAs) | ███ ███ |
| Detention Facility Name and Location | Tallahatchie County ███████ ████████ Facility   A#(s) ████████ |
| Field Office New Orleans Field Office | |

### NOTICE TO THE ALIEN

Because you have been determined to have a "credible fear" of persecution or torture, U.S. Immigration and Customs Enforcement (ICE) will consider whether to parole you from custody pending the resolution of your immigration proceedings. As an Asylum Officer may have already explained to you, ICE may grant you parole if you can establish to ICE's satisfaction: (1) your identity; (2) that you are likely to appear for all scheduled hearings and enforcement appointments (including for removal from the United States if you are ordered removed); and (3) that you do not present a security risk to the United States or a danger to the community.

**1) Documents that _May_ Prove Identity**
- **Passport**
  - o Your *original*, valid passport OR
  - o Copy of your passport AND one or more of the other identity documents listed here
- **National ID Card**
  - o Your *original*, valid national ID card OR
  - o Copy of your national ID card AND one or more of the other identity documents listed here
- **Birth Certificate**
  - o Your *original* birth certificate AND one or more of the other identity documents listed here
  - o Copy of your birth certificate AND one or more of the other identity documents listed here
- **Affidavit (Letter) from a Person Who Can Confirm Your Identity**
  - o *Must* include your full name, your date of birth, your nine-digit A-number, and your country of origin
  - o *Must* be signed by a lawful permanent resident (green card holder) or citizen of the United States of America and include a copy of the person's passport or green card
  - o *Must* include the person's full name and her/his address and phone number(s)
  - o *Must* state how and for how long he or she has known you

**2) Documents that _May_ Prove that You are Not a Flight Risk**
- **Affidavit (Letter) from a Person or Community Organization Who Will Support You**
  - o *Must* include your full name, your date of birth, your nine-digit A-number, and your country of origin
  - o *Must* include the person's/organization's full name and her/his address and phone number(s)
  - o *Must* be signed by a lawful permanent resident (green card holder) or citizen of the United States of America and include a copy of the person's passport or green card
  - o *Must* state that you will reside at the address listed and that the person/organization is willing to support you – for example, provide you housing and food – while you are in immigration proceedings
  - o *Must* include a copy of a utility or telephone bill, with the person's/organization's name and current address matching the address of residence included in the affidavit
  - o *Can* include details of any other ties that you have to where you will live (family, friends, etc.)
- **In addition to the Affidavit of Sponsorship, you may also submit**
  - o Letters from others in the community where you will live, showing their support. Note: must include the writer's name, address, contact information, and immigration status.
  - o Documentation of any legal, medical or social services you will receive upon release

ICE Form 71-012 (7/12)

ments that _May Prove that Your are Not a Danger to the Community_
- Evidence of acquittal or dismissal of any criminal charges
- Certificates for rehabilitation classes or evidence of other positive accomplishments (completion of a degree or training, long-term employment, volunteer activities, activities with your place of worship)
- Affidavit attesting to your rehabilitation
  - o Must include your full name
  - o Must be signed by a lawful permanent resident (green card holder) or citizen of the United States of America and include a copy of her/his passport or green card
  - o Must include the person's full name and her/his address and phone number(s)
  - o Must state how and for how long he or she has known you
  - o Must explain why she/he believes that you have been rehabilitated

If you would like ICE to consider any documents as part of its assessment whether to parole you from detention, you must provide those documents as soon as possible to allow ICE sufficient time to review the documents thoroughly before your interview. You may also request additional time to obtain documents for ICE's consideration, but should make that request as soon as possible.

ICE has scheduled you for an interview to assess whether you meet these qualifications. That interview will take place at the time and place indicated below.

Your parole interview has been scheduled with an ICE officer at the following date and time:

<u>    11/17/2018    </u> @ <u>    0800    </u>
(Month, Day, Year)   (Time – Indicate "a.m." or "p.m.")

Please provide any paperwork you would like considered (or any request for additional time to gather paperwork) no later than

<u>    10/18/2018    </u>, to:
(Month, Day, Year)

Robert Deville                        415 US Highway 49N, Tutwiler, MS
Officer Name                          Address/City/State/Zip

+1 (662) 345-6567                     +1 (662) 345-8527
Office Telephone Number               Fax

_(ICE Detention and Removal Operations Field Office Personnel: Indicate Manner in Which Alien Should Provide Documentation)_

Following your interview, you will be notified in writing of ICE's decision, usually within 7 days. If your request is denied you will receive a written explanation of the denial.

---

**PROOF OF SERVICE**

Asylum Seeker's Signature (Sign in ink): _____

Date: _____

ICE Officer's Name: _____

Language Used: _____  Interpreter Number (if applicable): _____

ICE Form 71-012 (7/12)

# <u>EXHIBIT C</u>



Office of Enforcement and Removal Operations

U.S. Department of Homeland Security
1000 East Whaley Rd.
Oakdale, LA 71463

**U.S. Immigration
and Customs
Enforcement**

Date: January 10, 2019

Ana Maria Sardi

████████████████████

In Reference to:  A████████████

## NOTIFICATION DECLINING TO GRANT PAROLE

Dear:  Ana Maria Sardi

This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) has decided not to parole you from detention at this time.  Under ICE policy, arriving aliens determined by an Asylum Officer to have a credible fear of persecution or torture are initially considered for parole. While the decision whether to grant parole is discretionary, ICE policy is generally to grant parole to aliens determined to have a credible fear if they establish their identity and that they pose neither a flight risk nor danger to the community.

As part of its determination whether to parole you, on 01/10/2019, ICE conducted an initial interview with you.  Your immigration files and any supplemental documentation that you provided were reviewed at that time.  After reviewing all available information, ICE has determined that parole is not appropriate in your case at this time based on the following reason(s):

☐ You have not established your identity to the satisfaction of ICE.
    ☐ You did not present valid, government-issued documentation of identity, or any documents you submitted did not, to ICE's satisfaction, establish your identity.
    ☐ You did not provide third-party verification of your identity, or any third-party information you provided did not, to ICE's satisfaction, establish your identity.
    ☐ You did not, to ICE's satisfaction, establish your identity through credible statements.

☒ You have not established to ICE's satisfaction that you are not a flight risk.
    ☐ You failed to provide, to ICE's satisfaction, a valid U.S. address where you will reside while your immigration case is pending.
    ☒ You did not establish, to ICE's satisfaction, substantial ties to the community.
    ☒ Imposition of a bond or other conditions of parole would not ensure, to ICE's satisfaction, your appearance at required immigration hearings pending the outcome of your case.

☐ You have not established to ICE's satisfaction that you are not a danger to the community or U.S. security. In making this determination, ICE has taken into account any evidence of past criminal activity, activity contrary to U.S. national security interests, activity posing a concern of public safety or danger to the community, disciplinary infractions or incidents, or other criminal or detention history that shows you have harmed or would likely harm yourself or others.

☐ Additional exceptional, overriding factors (e.g., law enforcement interests or potential foreign policy consequences) in your case militate against parole, as follows:

**Issuance of a bond will not guarantee subject will appear for BOND proceedings.**

☐ ICE previously provided you with a written decision declining to grant parole, and you have failed to provide additional documentation or to demonstrate any significant changed circumstances which would alter ICE's previous determination.

You may request a redetermination of this decision in writing, based upon changed circumstances in your case or additional documentation you would like ICE to consider. Such changed circumstances or documentation should relate to the reason(s) indicated above why ICE is not paroling you from custody at this time. For example, if you have not established your identity to ICE's satisfaction, you may wish to consider providing previously unfurnished government-issued documents such as passports, birth certificates, or identity cards. Identity can also be established through written statements prepared by individuals whom you know in the United States and whose identity ICE can verify to its satisfaction. These statements should include the address of the person you know in the United States and evidence of his or her identity. Finally, if there are multiple grounds checked above, you should try to provide further evidence addressing each of them.

If you request redetermination of this decision, please direct your written request to the address above, include a copy of this letter and any other prior ICE written decision(s) declining to grant you parole, and clearly explain what changed circumstances or additional documents you would like considered. Failure to provide satisfactory documentation and explanation may result in a denial of your request for redetermination.

Sincerely,

George H. Lund III
Field Office Director
New Orleans, Louisiana

# **EXHIBIT D**

Clinical History Summary                    12/04/2018

Y█ A█    L█ with identity No █████████



Patient of 50 Years of Age with personal pathological history of Arthropathy due to crystals (Gota), which in 2005 was diagnosed, with joint involvement of the first metatarsofalangic joints of the feet, ankle, elbow.

Since its inception with high levels of uric acid (hyperuricemia), taking treatment with anti-inflammatory drugs, non-steroids (NSAIDs), colchicine tab 0.5 mg in periods of acute crisis and intercrisis at a minimum dose of 0.5 mg a day, and allopurinol Tab 100 mg 1 daily with radiological compromise of the affected joints, no presence of gouty tofo, or a history of kidney affectations.


Treatment: Colchicine tab 0.5 mg 1 daily

           Allopurinol Tab 100 mg 1 daily

ID: Arthropathy due to crystals


(Hospital PDCQ Leon Cuervo Rubio)

(Admition MINSAP Pinar del Rio)

Hospital PDCQ Leon Cuervo Rubio

Admition MINSAP Pinar del Rio

---

I certify that I am fluent in the English and Spanish languages, and that the above / attached document is an accurate translation made from the original document

Notary Public Signature

ANNIA BIDOPIA
Notary Public - State of Florida
Commission # FF 185958
My Comm. Expires Apr 17, 2019
Bonded through National Notary Assn.

Notary Public Seal

Resumen de Historia Clínica: 4/12/18

y █ A █ L █ CI: █

Paciente de 50 años de edad con antecedentes patológicos personales de una artropatía por cristales (Gota) que en el año 2005 se hace su diagnóstico, con compromiso articular de las primeras articulaciones metatarsofalángicas de los pies, tobillo, codo. Desde su inicio con cifras elevadas de ácido úrico (hiperuricemia), llevando tratamiento con antiinflamatorios no esteroides (AINES), colchicina tab 0.5 mg en períodos de crisis agudas e intercrisis a dosis mínima 0.5 mg al día, y alopurinol tab 100 mg 1 diaria, sin compromiso radiológico de las articulaciones afectadas ni presencia de tofo gotoso, ni historia del afectaciones renales.

Tratamiento: Colchicina tab 0.5 mg 1 día
Alopurinol tab 100 mg 1 día

ID: Artropatía por cristales (Gota)



Hospital P.D.C.Q. León Cuervo Rubio
Admisión
MINSAP- Pinar del Río

Dra. Yel███ ███rana Alfonso
███1722