UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Heredia Mons, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 19-cv-1593 (JEB) |
| v. ) | |
| ) | |
| Kevin K. McAleenan, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Kevin K. McAleenan, Acting Secretary of the U.S. Department of Homeland Security ("DHS"); Matthew T. Albence, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Timothy S. Robbins, Acting Executive Associate Director of ICE Enforcement and Removal Operations;[1] and George Lund III, Director of ICE's New Orleans Field Office, in their official capacities (collectively, "Defendants"), file this reply in support of their motion to dismiss.

**ARGUMENT**

Defendants have moved to dismiss this lawsuit, and oppose the motion for preliminary injunction and motion for class certification, based on the same legal arguments raised in the corresponding filings in *Damus v. Nielsen*, Case No. 18-578 (JEB).  As those issues already have been addressed in *Damus,* Defendants focus this reply on the issue of mootness, which is a separate basis for dismissal addressed in Defendants' motion that was not addressed in *Damus*. As to the issues raised in *Damus*, Defendants refer the Court to the arguments made in

---

[1]   Nathalie Asher is no longer the Acting Executive Associate Director of ICE Enforcement and Removal Operations.   Pursuant to Rule 23(d), Timothy S. Robbins is substituted as a defendant in place of Ms. Asher.

defendants' filings in *Damus*, which are incorporated herein by reference. *See* Case No. 18-578, ECF Nos. 22, 23, 26, 28, and 31.

This lawsuit was filed on May 30, 2019, and was brought by twelve named Plaintiffs who, at the time, were in custody of the ICE New Orleans field office. Subsequently, one of these named Plaintiffs (Tumenta) has withdrawn from the case,[2] and another (J.M.R.) was transferred to a different ICE field office and thus should be dismissed from this case for that reason.

Each of the ten remaining named Plaintiffs alleges that he or she received an adverse parole determination by the ICE New Orleans' field office that allegedly failed to comply with the 2009 ICE Parole Directive because, according to Plaintiffs' allegations, the New Orleans Field Office "has taken the position that the 2009 Parole Directive is no longer in effect" and is "failing to provide individualized determinations, instead issuing denials on a categorical basis." (Compl. ¶¶ 132, 136) For those reasons, Plaintiffs contend that the denials of parole that they received were arbitrary, capricious and contrary to law in violation of the Administrative Procedure Act ("APA"), the Immigration and Nationality Act and the Fifth Amendment. As relief, each sought "parole reviews that result in individualized determinations that detention is necessary to prevent flight or danger to the community and that conform to the other requirements of the 2009 Parole Directive." (Compl. at 37)

---

[2]  In their motion for class certification, Plaintiffs acknowledge that the claims of Plaintiff Tumenta are moot and state that "he is no longer a Plaintiff in this case." (ECF No. 15-1 at 2 n.1)

Although these Plaintiffs also brought similar claims on behalf of a putative class, no class has been certified as of this date. Consequently, the issue of mootness is assessed based solely on whether these individuals continue to have live claims. *J.D. v. Azar,* 925 F.3d 1291, 1307 (D.C. Cir. 2019) ("For every claim, at least one named plaintiff must keep her individual dispute live until certification, or else the class action based on that claim generally becomes moot.")

As addressed in Defendants' motion, and further discussed below, Plaintiffs' claims are moot because all ten remaining Plaintiffs have had their parole determinations re-adjudicated in accordance with the 2009 Parole Directive, which is the precise relief that they seek in this lawsuit. Although Plaintiffs maintain the New Orleans Field Office still is not complying with the parole directive, they do not offer evidence to support that contention other than the same allegations that they made to contend that their initial adjudications were defective. Indeed, of the ten Plaintiffs, only one – Plaintiff P.S.P. – contends in opposition to the motion to dismiss that the re-adjudication of his parole determination was still non-compliant with the procedures of the parole directive. All others have effectively conceded by their silence that the re-adjudications were compliant. Moreover, P.S.P.'s basis for claiming non-compliance – that he was not interviewed – is not by itself a basis to contend that the re-adjudication failed to comply with the 2009 parole directive. *See* 2009 Parole Directive ¶ 8.9 (In a redetermination of an earlier decision denying parole, "the Field Office may, in its discretion, reinterview the alien or consider the request based solely on documentary material already provided or otherwise of record.")

Plaintiffs otherwise argue against mootness on the basis of the voluntary cessation doctrine, which is inapplicable here as discussed below.  Plaintiffs also contend that two of the Plaintiffs – Toledo Flores and Mena Lopez – should be permitted to proceed as class representatives even though their "individual claims have been extinguished by winning asylum and release from custody" on the basis of the "inherently transitory" exception to mootness. That argument also fails as discussed below.

## I. Plaintiffs' Individual Claims Are Moot

In its motion to dismiss, Defendants submitted a declaration and documentation establishing that all ten remaining Plaintiffs had their parole determinations re-adjudicated in accordance with the 2009 Parole Directive.  In opposition, Plaintiffs contend that the Court should decline to credit Defendants' evidence that individualized determinations were conducted as part of those re-adjudications "given the lack of corroboration and the overwhelming evidence to the contrary."  (ECF No. 30, Opp. at 10)

As a threshold matter, this Court previously observed in *Damus* that "[t]o the extent Plaintiffs are challenging the [parole] determinations themselves – i.e., the actual balancing of the merits of each application for parole – this Court agrees that it lacks jurisdiction."  *Damus v. Nielsen,* 313 F. Supp. 3d 317, 327 (D.D.C. 2018).  Accordingly, Plaintiffs' dissatisfaction with the outcome of the re-adjudications is not a basis for judicial review. Rather, as in *Damus,* Plaintiffs' challenge is limited to whether the "policies and procedures" in the 2009 Parole Directive are being followed in connection with parole determinations.  As relevant to this case, the alleged "policy or procedure" allegedly not being followed is the requirement in the directive to conduct an individualized determination.  The 2009 Parole Directive does not require

4

"corroboration" of any such determination and Plaintiffs contention otherwise improperly crosses into the "balancing of the merits of each application for parole," which this Court lacks jurisdiction to evaluate. For that reason, this case is distinguishable from *Ramirez v. ICE,* 310 F. Supp. 3d 7 (D.D.C. 2018), which involved the agency's alleged failure to consider less restrictive placement alternatives as required by the applicable statute, *id.,* at 20, and not an alleged failure to follow a specific procedure in an agency directive.  Accordingly, the issue of mootness here does not go to the merits of whether the prior adjudications were compliant, but rather focuses on the fact that Plaintiffs have now obtained the relief requested, which is a re-adjudication of their parole determinations in accordance with the 2009 Parole Directive.

In any event, Plaintiffs have not provided "overwhelming evidence" of any deficiencies with the re-adjudications.  Plaintiffs' argument instead rests almost entirely on allegations that Plaintiffs have made with respect to their original parole adjudications.  But those allegations have no bearing on the sufficiency of the re-adjudications that were recently conducted.  As noted in Defendants' motion, with few exceptions, the re-adjudications considered that these Plaintiffs have had, since the beginning of the year, an adverse decision on their asylum claim either by an immigration judge or the Board of Immigration Appeals ("BIA"), which is a factor relevant to the issue of flight risk.  In addition, the declarations submitted by Defendant with their motion have clarified the prior miscommunication on which Plaintiffs rely for their allegation that "the New Orleans ICE Field Office has taken the position that the 2009 Parole Directive is no longer in effect" (Compl. ¶ 132), which is the basis for Plaintiffs' APA claim. (ECF No. 26-3, Acuna Decl. ¶¶ 13-14)

With respect to the re-adjudications themselves, Plaintiffs offer one piece of evidence, namely, a declaration by one of the ten Plaintiffs – Plaintiff P.S.P. – in which P.S.P. contends that his re-adjudication was deficient because he was not interviewed. (ECF No. 30-1).  That is the sum total of the so-called "overwhelming evidence" offered by Plaintiffs in opposition to Defendants' motion to dismiss.[3]  By their silence, the remaining nine Plaintiffs have effectively conceded that their parole re-adjudications complied with the 2009 Parole Directive.  Moreover, although Defendants do not concede that P.S.P.'s allegation is accurate, it suffices to note that the parole directive does not require interviews as part of a re-adjudication. *See* 2009 Parole Directive ¶ 8.9 (In a redetermination of an earlier decision denying parole, "the Field Office may, in its discretion, reinterview the alien or consider the request based solely on documentary material already provided or otherwise of record.")  Although P.S.P. appears to allege that he was not afforded an interview in connection with his original adjudication (Compl. ¶¶ 94-95), he does not address those allegations in his declaration.

Because all ten remaining Plaintiffs had their parole determinations re-adjudicated in accordance with the 2009 Parole Directive, their claims are moot and this case should be dismissed on that basis.  In addition, subsequent developments have mooted the claims of

---

[3]   Plaintiffs also attach an email to their reply brief in support of their motion for preliminary injunction that they contend establishes that, as to M.R.M.H.'s re-adjudication, the ICE official "making the parole determination . . . did not review any of the submitted medical documents when making the parole determination." (ECF No. 28 at 8, referencing ECF No. 28-2)  That email, however, was dated July 10, 2019, and reflects that the officer was asking for copies of the medical documents so that they could be reviewed.  Importantly, M.R.M.H.'s re-adjudication was finalized on July 31, 2019, almost two weeks from the date of the email.  Accordingly, the email fails to establish that the medical records were not reviewed as part of the re-adjudication.  To the contrary, it establishes an effort by the ICE official to conduct an individualized determination.

several of these Plaintiffs on independent grounds. As discussed in Defendants' motion, F.J.B.H. did not appeal an immigration judge's removal order and the BIA dismissed Heredia Mons' appeal of an order of removal, which rendered that order final. (ECF No. 22-1 at 16 n.7) Moreover, the Fifth Circuit has now denied Heredia Mons' motion to stay his removal pending the outcome of his petition for review to the Fifth Circuit. (Case No. 19-60498) (5th Cir.), Order of Aug. 21, 2019) In addition, since the filing of Defendants' motion to dismiss, the BIA dismissed Y.A.L.'s appeal of an order of removal, rendering that order final and making Y.A.L. subject to removal. These three plaintiffs, therefore, are no longer eligible for parole under the statute or the Parole Directive. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."); Parole Directive ¶ 1.1 ("This directive applies only to arriving aliens . . . .").

Two Plaintiffs (Toledo Flores and Mena Lopez), moreover, have been granted asylum and released from ICE custody. Another Plaintiff, Giron Martinez, was granted asylum by an immigration judge on August 13, 2019, although the government's 30-day period to determine whether to appeal that determination has not yet expired.

## II. The Two Exceptions To Mootness Do Not Apply Here

Plaintiffs contend that two exceptions to mootness apply here. First, Plaintiffs contend that the voluntary cessation doctrine precludes a dismissal on mootness grounds. Second, as to the two Plaintiffs who have been granted asylum and released (Toledo Flores and Mena Lopez), Plaintiffs contend that the "inherently transitory exception" allows those Plaintiffs to proceed as class representatives even though their individual claims "have been extinguished by winning asylum and release from custody." Neither argument has merit.

### A. The Voluntary Cessation Doctrine

The "voluntary cessation" doctrine does not preclude a dismissal on mootness grounds. "Although generally voluntary cessation of challenged activity does not moot a case, a court may conclude that voluntary cessation has rendered a case moot if the party urging mootness demonstrates that (1) 'there is no reasonable expectation that the alleged violation will recur,' and (2) 'interim relief or events have completely or irrevocably eradicated the effects of the alleged violation.'" *Nat'l Black Police Ass'n v. D.C.,* 108 F.3d 346, 349 (D.C. Cir. 1997). That is the case here.

The government has established that each of the ten remaining Plaintiffs had their parole determinations re-adjudicated in accordance with the 2009 Parole Directive. Thus, to the extent there were any deficiencies in the original adjudication (which Defendants deny), they have been addressed by the re-adjudication, which is the relief that Plaintiffs requested in this lawsuit. Thus, the second prong is established.

To establish the first prong -- a reasonable expectation of the recurrence of an alleged violation -- there must be evidence indicating that the challenged action is likely to recur as to these specific Plaintiffs. *Id.* Here, there is no such evidence, nor is such an inference plausible from the record, given that these Plaintiffs have now been afforded the requested re-adjudications in accordance with the 2009 Parole Directive. *See Citizens for Responsibility & Ethics in Washington v. SEC*, 858 F. Supp. 2d 51, 62-63 (D.D.C. 2012) (finding that, "[w]hile Plaintiff's brief raises concerns about the possible recurrence . . . there are no facts to suggest" such a recurrence and Plaintiff's "conjecture is insufficient" where the defendant is a government

entity).[4]   As the D.C. Circuit has recognized previously, "'a legal controversy so sharply focused on a unique factual context' would rarely 'present a reasonable expectation that the same complaining party would be subjected to the same action again.'"   *PETA v. Gittens,* 396 F.3d 416, 424 (D.C. Cir. 2005); *see also Chichakli v. Trump,* 714 Fed. Appx 1, 2 (D.C. Cir. 2017) ("The 'voluntary cessation' exception to mootness cited by appellant does not apply because there is no reasonable expectation that appellant will be subjected in the future to the same governmental actions giving rise to the claims dismissed by the district court as moot.")

### B. Inherently Transitory Exception

As to two of the named Plaintiffs (Mena Lopez and Toledo Flores), Plaintiffs contend that the "inherently transitory" exception permits them to proceed as class representatives even though Plaintiffs concede that these individuals no longer have live claims because they have been granted asylum and released from ICE custody.   (ECF No. 30 at 12)   Plaintiffs do not contend that this exception applies to all named Plaintiffs, but only the two named Plaintiffs who, as of this date, have completed their asylum proceedings, been granted asylum and been

---

[4]   In *Citizens for Responsibility & Ethics in Washington*, the court observed that other courts have "consistently recognized that where the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior." *Citizens for Responsibility & Ethics in Washington*, 858 F. Supp. 2d at 61 (citing cases); *see also America Cargo Transp. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) ("Cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties."); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 & n.15 (10th Cir. 2010) (citing several cases taking this approach); *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("[C]ourts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity . . . ."); *Beta Upsilon Chi Upsilon Chapter at the Univ. of Florida v. Machen*, 586 F.3d 908, 916–17 (11th Cir. 2009) ("In cases where government policies have been challenged, the Supreme Court has held almost uniformly that voluntary cessation of the challenged behavior moots the claim."); *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003).

released from ICE custody. (*Id.*)   Plaintiffs have the burden of establishing that this limited exception applies.   *J.D.,* 925 F.3d at 1307.

This exception arises in a limited situation where, given the nature of the claims at issue, the claims of all named plaintiffs are so potentially fleeting that they might not survive until the Court has the opportunity to rule on a class certification motion.   *Id.* at 1310.   In such cases, a certification of a class can relate back to the filing of the Complaint when the claims of the named Plaintiffs were still live.   *Id.* at 1308.

Here, by asserting that the exception applies to only two of the named Plaintiffs, Plaintiffs effectively concede that the exception is inapplicable.   All of the named Plaintiffs assert the same claims and, by focusing on the status of only two of the named Plaintiffs, Plaintiffs acknowledge that the nature of the claims at issue as a whole are not so transitory as to fall within this exception.

Plaintiffs base their argument on the fact that two Plaintiffs have had their asylum proceedings concluded favorably and have been released from ICE custody prior to the Court's resolution of the motion for class certification.   But there is no pre-determined timetable for the completion of asylum proceedings, which can involve multiple procedural steps, including proceedings before immigration judges and potential appeals to the BIA, which can result in remands matter back to the immigration judge for further review.   Indeed, many of these procedural possibilities have arisen here as reflected in Defendants' motion.   (ECF No. 26 at 10-12)    For instance, Plaintiff Puche Moreno had been denied asylum by an immigration judge in January 2019, but, in June 2019, the BIA remanded the matter back to the immigration judge to further assess the claim.   That matter is still pending before the immigration judge.   Another

Plaintiff, R.O.P., allegedly entered the United States in July 2018 (Compl. ¶ 22), and his appeal to the BIA of an adverse ruling by an immigration judge is still pending.

The question under this exception is not whether some of the named Plaintiffs have had their claims expire, but whether the nature of the claims are such that they are inherently transitory. As the record above reflects, that is not the case here. Although courts have not established a specific amount of time that renders a claim "inherently transitory," proceedings that can extend beyond a year would seem to fall outside that exception. *Compare J.D.,* 925 F.3d at 1311 ("The claims at issue likely will, or at least might, end quickly. The average length of custody for a minor as 41 days in fiscal year 2017, when the initial complaint was filed, and was roughly 90 days by the beginning of fiscal year 2019."); L.Cv.R. 23.1(b) (motion for class certification due "[w]ithin 90 days after the filing of a complaint," unless extended by the Court).[5] Ultimately, with a hearing on class certification scheduled for August 29, 2019, and several of the named Plaintiffs still in the process of having their asylum claims adjudicated, Plaintiffs cannot establish that the nature of the claims at issue are inherently transitory under this exception to mootness.

---

[5]   In *Nielsen v. Preap,* 139 S. Ct. 954 (2019), a three-justice plurality, after determining that at least one class representative's claim was not moot, proceeded to state that all of the claims of the class were "transitory." *Id.* at 963 (plurality)   As noted by the dissent in *J.D.,* the plurality in *Preap* did not conclude "that a claim lasting one year was too brief." *J.D.,* 925 F.3d at 1342 (Silberman, J., dissenting). Rather, in stating that the claims of the class were "transitory," the "plurality never mentioned the amount of time at issue" but instead focused on the specific claim at issue. *Id.* As observed by Judge Thomas in his concurrence in *Preap,* a period of one year would not appear to fall within this exception. *Preap,* 139 S. Ct. at 976 (Thomas J., concurring). Accordingly, *Preap* does not constitute precedent that proceedings that continue for a one year period are "transitory" for purposes of this exception.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Defendants' motion, the Complaint should be dismissed.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. BAR # 924092
Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

Counsel for Defendant