UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Heredia Mons, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 19-cv-1593 (JEB) |
| v. | ) | |
| | ) | |
| Chad Wolf, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**JOINT STATUS REPORT**

Pursuant to the Court's Minute Order dated July 17th, 2020, the parties submit the following joint status report addressing a proposed discovery plan and identifying any areas in which the parties are unable to reach an agreement. Accordingly, the parties, by and through undersigned counsel, report to the Court their respective positions on the Plaintiffs' proposed discovery plan.

**Proposed Joint Discovery Plan**

A. **Meet and Confer:** the parties, through counsel, held a meeting by telephone on July 22, 2020, which was attended by the following attorneys: Luz Lopez, Bruce Hamilton, Mich Gonzalez and Victoria Mesa-Estrada (Counsel for Plaintiffs), and Jeremy Simon (Counsel for Defendants).

B. **Subjects and Nature of Plaintiffs' Discovery**

Plaintiffs request discovery on the following subjects:[1]

---

[1] The parties agree that the scope of the discovery requests sought refer to the 2009 Parole Directive and Immigration and Customs Enforcement ("ICE") compliance with the directive and the Court's September 5, 2019 Preliminary Injunction Order.

1) methods for collection of applicant data (recording systems tracking collection and status of applications, technical functions of systems, information for personnel managing such systems); and

2) Implementation of required procedures and safeguards, and documentation regarding denial decisions.

1. **Written Discovery**

| PLAINTIFFS' REQUEST FOR WRITTEN DISCOVERY: | DEFENDANTS' POSITION (AGREE OR DISAGREE): |
|---|---|
| 1. Produce all DHS and/or ICE documents, records, data, memoranda, and/or directives created, possessed, produced, received and/or implemented by Defendants, including their officers, agents, assigns, employees or representatives, between September 5, 2019 to the present, reflecting any formal and/or informal policy, practice, directive, procedures, standards, and information collected and/or implemented by the New Orleans ICE Field Office (hereinafter "NOLA ICE") during receipt, review, processing, and the determination process of parole requests made pursuant to the 2009 Parole Directive and September 2019 Order.<br><br>Plaintiffs' response to Defendants' objections: Plaintiffs agree that the discovery pertains to parole requests made pursuant to the 2009 Parole Directive and compliance with the Court's September 5, 2019 order. To the extent that unprivileged content may be included in privileged communications, Defendants should redact the privileged information but still be required to produce all non-privileged content related to this specific request. Moreover, Plaintiffs assert that this request is not unduly burdensome, and is narrowly focused on the issues in dispute. | Object. Overly broad, not narrowly tailored, and goes beyond the type of discovery ordered in connection with the *Damus* contempt hearing. As phrased, this would encompass all documents from September 5, 2019 to the present related to all parole determinations with respect to detainees within the New Orleans Field Office. Defendants also object to the extent this request encompasses privileged communications, or would require a burdensome review of privileged communications to assess whether they contain any non-privileged communications.<br><br>Defendants do not object to providing the following: non-privileged communications from high level ERO management in the New Orleans Field Office disseminated field office wide regarding guidance/policy with respect to parole under the 2009 Parole Directive for the referenced time period. |
| 2. Identify any and all current or former ICE or DHS employees, agents, assigns, or | Object. This is overly broad, unduly burdensome, does not relate to the |

| | |
|---|---|
| representatives, including deportation officers, with knowledge of any formal or informal policy, practice, or effort that NOLA ICE produced, received, and/or implemented relating to the review and processing of parole requests between September 5, 2019 to present. For deportation officers, provide their post/detention center location, designation, and the dates the D.O. served at the specified location.<br><br>Plaintiffs' response to Defendants' objections: Names of non-management ICE or DHS employees are relevant given existing anecdotal information that Plaintiffs have presented of Defendants' non-compliance with the parole directive.  Moreover, this request is narrowly-tailored and does not unduly burden Defendants. | requirements of the 2009 Parole Directive, and goes beyond the type of discovery ordered in connection with the *Damus* contempt hearing.   Subject to this objection, Defendants will provide the names of high-level management within the New Orleans Field Office who had a role in disseminating policy and/or guidance regarding the 2009 Parole Directive since September 5, 2019.<br><br>It is Defendants' position that Defendants are best able to identify any individuals who are deposed (which Defendants believe was the process in *Damus*).  Accordingly, there is no need for Plaintiffs to obtain the names of non-management ICE or DHS employees. |
| 3.List of all asylum-seekers, who have received positive credible fear findings under the jurisdiction of the New Orleans ICE Field Office, and  submitted Parole Requests from the period since the Preliminary Injunction Order was issued in September 5, 2019, as well as their country of origin.<br><br>Plaintiffs' response to Defendants' Objections:<br>*Heredia-Mons* is distinguishable from *Damus*, as Plaintiffs noted at the most recent telephonic conference on discovery and contempt.  Information concerning parole requests is highly relevant, because ICE should include all parole request submissions in the monthly report, not just those where ICE has rendered a determination.  Plaintiffs have reason to believe that ICE has willfully delayed issuing determinations on a significant number of parole request, de facto denying them, but because ICE has not issued a formal determination, this data is excluded from the monthly reports.  As a result, the rates of parole grants and the reliability of the | Object.  This is overly broad, unduly burdensome, does not relate to the requirements of the 2009 Parole Directive, and goes beyond the type of discovery ordered in connection with the *Damus* contempt hearing.   To the extent this request is intended to be limited to asylum-seekers who received positive credible fear determinations, the monthly spreadsheets that are provided identify class members who have made parole requests and the determinations that they received on those requests.<br><br>Defendants further state that the monthly spreadsheets that Defendants have provided have been prepared consistent with the representations made in the October 2, 2019 status report and the Court's order dated October 7, 2019, in which the Court directed, in relevant part, that "the Reports shall issue in the manner proposed by Defendants in the [October 2, 2019] Status Report." |

| | |
|---|---|
| monthly reports are affected. Requests should be adjudicated in an individualized manner and in a reasonable length of time, pursuant to the Directive. Moreover, this request is narrowly-tailored and does not unduly burden Defendants. | |
| 4. Provide a random sample of Parole Determination documents, including parole advisals, parole worksheets and parole determinations for each detention facility. The sample shall be composed of (one out of every ten parole requests as ordered in *Damus v. Nielsen,* but not less than 200 files) for individuals in NOLA custody since September 5, 2019 and shall show:<br><br>• Date Entered ICE Custody;<br>• Date of Positive Credible Fear Finding;<br>• Country of Origin;<br>• Language spoken, if not English;<br>• Date of Birth;<br>• Gender;<br>• Sponsor Type (family, friends, etc.);<br>• Location of Sponsor;<br>• Contact information of sponsors of released individuals;<br>• Date of submission of parole request;<br>• Date and conclusion of determination made;<br>• Number of parole requests made by each arriving alien;<br>• Number of parole decisions made; and<br>• Date Left ICE Custody if applicable.<br><br>Plaintiffs' response to Defendants' Objections: Plaintiffs agree with Defendants' proposed approach of conducting a random sampling of parole determination documents, which Plaintiffs understand is as follows:<br>• The random sampling in *Damus* was 1 out of every 10 determinations. As there were approximately 1,000 determinations (ECF No. 52, Damus Mem. Op. at 7), that translated into | Defendants will agree to provide a random sampling of parole determination documents (i.e., parole advisal, parole worksheet, and parole determination), in the same manner as provided in the *Damus* matter, with the following modifications because of the difficulty of obtaining information from A-files that are no longer within the New Orleans Field Office under the current COVID telework situation.<br><br>• The random sampling in *Damus* was 1 out of every 10 determinations. As there were approximately 1,000 determinations (ECF No. 52, Damus Mem. Op. at 7), that translated into approximately 100 files. Because there are twice as many determinations at issue here, Defendants propose 1 in every 20, utilizing the existing monthly spreadsheets of parole determinations.<br><br>• Allow for ICE to select different file if not available for various reasons (that was the arrangement in *Damus*). That would mean that if an A file is not accessible, ICE would go down the list to the next individual until a file is accessible.<br><br>• This process would be done until there is a minimum of 100 files obtained.<br><br>• Object to the listed categories of information; limited to whatever information is contained on the random sampling of the three categories of documents (parole |

| | |
|---|---|
| approximately 100 files. Because there are twice as many determinations at issue here, Defendants propose selecting 1 in every 20 files, utilizing the existing monthly spreadsheets of parole determinations.<br><br>• Plaintiffs agree that ICE will select the next name on the list, if an A file is not available (the same as in *Damus*).<br><br>However, plaintiffs disagree with limiting the number samples to a minimum of 100 determination files. Given the number of parole determinations received by NOLA ICE since September 6, 2019, Plaintiffs believe that a true representative sample would be a minimum of 200 files. In addition, Plaintiffs request that this random sampling is broken down proportionally among each detention facility in the ICE NOLA jurisdiction.<br><br>Plaintiffs' requests are neither burdensome nor onerous, as Defendants already possess this information, as shown by their monthly reports to the Court. Further, they are narrowly-tailored. | advisal, parole worksheet and parole determination).<br><br>• Object to making it facility specific as unduly burdensome, including for the following reasons:<br><br>-Defendants also note that the initial parole determination spreadsheet that is part of the monthly reports, consistent with the Court's October 7, 2019 order, does not list the facility. Moreover, as set forth in Defendants' opposition to the motion for contempt, in terms of the spreadsheet that reflects re-determination decisions, some facilities have had only a limited number of re-determination decisions since September 5, 2019 (Def. Mem. at 18), making a random sample infeasible as to such facilities.<br><br>-It would be more efficient, and less burdensome, for the agency to work off the existing spreadsheets which have been prepared consistent with the October 7 order. |
| 5. Produce all documents analyzed, reviewed and used by Defendants in compiling monthly reports to the Court, pursuant to the 2009 parole directive and the Court's September 5, 2009 Order.<br><br>Plaintiffs' Response to Discovery:<br>Defendants have control over the requested documents, many of which are in electronic format, making this request not overly burdensome; the request is also narrowly tailored. | Object. This is overly broad, unduly burdensome, does not relate to the requirements of the 2009 Parole Directive, and goes beyond the type of discovery ordered in connection with the *Damus* contempt hearing.<br><br>To the extent the data is in electronic format, the data is part of a voluminous law enforcement sensitive database that contains information beyond the scope of this litigation and that is not maintained in a manner that can be easily produced. |
| 6. Produce all documents, manuals, training materials, and attendance sign-in sheets, including names of participants and dates of attendance, for all trainings of deportation | Object in part. Defendants are willing to provide training materials that have been used in training related to the 2009 Parole Directive since September 5, 2019. Object to |

| | |
|---|---|
| officers conducted by ICE NOLA since September 5, 2019, related to the review and processing of parole requests pursuant to the 2009 parole directive and this Court's September 2019 Order in the New Orleans ICE Field Office.<br><br>Plaintiffs' Response to Defendants' Objections:<br><br>Plaintiffs posit that information related to training ICE personnel after this Court's September 2019 Order is relevant, as it will identifyindividuals who received the training, the nature of the training, and the timing of such. This request is not overly burdensome, and the information requested is narrowly tailored. | the remainder as overly broad, unduly burdensome and disproportionate to the needs of the case. |
| 7. Identify all recording, tracking, collection, and other systems used in relation to maintaining track of parole applications, the technical functions of such systems, and the personnel responsible for managing such systems | Object. This is not a request for documents but more in the nature of an interrogatory. This is overly broad, unduly burdensome, does not relate to the requirements of the 2009 Parole Directive, and goes beyond the type of discovery ordered in connection with the *Damus* contempt hearing. |

**2. Depositions**

Plaintiffs also seek to take the deposition(s) of the following officials from the ICE NOLA Field Office —regarding ICE's activity since the injunction issued, and any necessary context from the preceding period.

| **PLAINTIFFS' PROPOSED DEPOSITIONS:**[2] | **DEFENDANTS' POSITION (AGREE OR DISAGREE):** |
|---|---|
| 1. Deposition of designated individual(s) responsible for compiling Defendants' monthly government reports to the Court.<br><br>Plaintiffs' Response to Defendants' Objections:<br>As previously stated, this case is distinguishable from *Damus* as Plaintiffs' evidence has uncovered a pattern and practice of inconsistencies among detention facilities, and inaccurate information in the government reports, which puts into question the reliability of these reports. Thus, the depositions of ICE personnel representing different detention facilities will aid the Court in assessing Plaintiffs' claims of unreliability, inconsistency, and accuracy.  Further, Plaintiffs do not intend to raise matters related to the outcomes of specific parole determinations. | In Damus, the Court permitted one deposition per field office.  As there is only one field office at issue here, Defendants' position is that, per *Damus*, there should be one deponent designated by the Defendants to testify as to compliance with the 2009 Parole Directive since September 5, 2019 by the New Orleans Field Office.  This would be limited to guidance provided by high-level management, training and any other efforts by management to ensure compliance with the 2009 Parole Directive.  Defendants would object to any questions focused on any individualized parole determination as outside the scope of the lawsuit and to the contents of privileged communications. |
| 2. Deposition of at least one deportation officer ("DO") selected by Plaintiffs from each of the detention facility within the jurisdiction of NOLA Field office. | Object.  See above (Defendants' position is that there should be one deponent designated by Defendants as discussed above) |
| 3. Deposition of personnel responsible for recording systems, tracking collection and status of parole applications. | Object. See above. |
| 4. Deposition of a high ranking official from U.S. Immigration and Customs Enforcement ("ICE") New Orleans Field Office—regarding ICE's activity since the September 5, 2019 preliminary injunction was issued, and any necessary context from the preceding period. | Object.  See above. |

---

[2] Plaintiffs agree the proposed depositions will be within the scope of the present dispute related to the government's compliance with the parole directive and the Court's September 5, 2019 Order.

C. **Proposed schedule and logistics:**

1. Service of initial written discovery- Plaintiffs will serve written discovery to defendants in accordance with the Court's input no later than July 28, 2020.
    i. The parties agree to a rolling production of documents by Defendants beginning within 30 days of receipt of Plaintiffs' requests (as approved by the Court) to be completed within 60 days. However, considering the global pandemic's effect on agency resources, including decreased in-person office presence, this deadline may be adjusted to accommodate difficulties in gathering responsive documents which requires the scanning of physical documents. Defendants will provide written responses to the discovery requests with the initial rolling production.

    ii. Depositions- Plaintiffs will be responsible for setting up and coordinating all logistics related to the scheduling of depositions at their own expense. Defendants agree to collaborate with Plaintiffs in setting up any depositions that may be permitted by the Court at a convenient date and time for all parties involved. Defendants will choose each deponent and agree to disclose the name of each deponent to Plaintiffs no later than seven (7) days before the scheduled deposition.

2. Depositions will commence no sooner than 20 days after Defendants complete their rolling production in response to the written discovery.
    Special discovery needs-
    i. Depositions- Given the current state of the COVID-19 pandemic, the parties agree to conduct all depositions by video conference. Plaintiffs will be responsible for making all arrangements for said depositions in collaboration with Defendants. Defendants will disclose and produce all requested written discovery to the extent permitted by the Court via electronically means such as via email, DOJ portal or USB device.

    Respectfully submitted,

    MICHAEL R. SHERWIN
    Acting United States Attorney

    DANIEL F. VAN HORN, D.C. BAR # 924092
    Civil Chief

    By: _____/s/_____
    JEREMY S. SIMON, D.C. BAR #447956
    Assistant United States Attorney
    Civil Division

555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

Counsel for Defendants

AND

MELISSA CROW (D.C. Bar #453487)
Senior Supervising Attorney

_____/s/_____
LUZ V. LOPEZ (*pro hac vice*)
Senior Supervising Attorney
**SOUTHERN POVERTY LAW CENTER**
1101 17th St., NW, 7th Floor
Washington, DC 20036
Tel: (202) 355-4471
Melissa.Crow@splcenter.org
Luz.Lopez@splcenter.org

VICTORIA MESA-ESTRADA (*pro hac vice*)
MICHELLE GONZALEZ (*pro hac vice*)
**SOUTHERN POVERTY LAW CENTER**
2 S BISCAYNE BLVD, STE 3200
MIAMI, FL 33101
**TEL:** (786) 347- 2056
victoria.mesa@splcenter.org
mich.gonzalez@splcenter.org

BRUCE HAMILTON (*pro hac vice*)
**AMERICAN CIVIL LIBERTIES UNION OF LOUISIANA FOUNDATION**
P.O. Box 56157
New Orleans, LA 70156
Tel: (504) 522-0628
kschwartzmann@laaclu.org
bhamilton@laaclu.org
Counsel for Plaintiffs