UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Heredia Mons, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | )    No. 19-cv-1593 (JEB) |
| v. | ) |
| | ) |
| Chad Wolf, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**JOINT STATUS REPORT**

    Pursuant to the Court's Minute Order dated November 10, 2020, the Parties, by and through undersigned counsel, submit the following joint status report addressing their respective positions regarding the remaining discovery matters on which the Parties are unable to reach an agreement.

**Remaining Discovery Issues For Plaintiffs**

    A. **Depositions**

    Plaintiffs ask that the Court order two additional depositions to supplement those of Quincy Hodges (Winn) and Scott Ladwig (La Salle), as both deponents testified that they were assigned to their roles many months after this Court's September 5, 2019 Order, and therefore lacked substantive, relevant knowledge to testify about compliance with the September 5, 2019 Order. This Court clearly instructed Defendants to produce a witness who "would be someone who is best able to speak to compliance since my [September 5, 2019] injunction." *See*, Tr. of July 23 Status Conference, p. 20.  The Defendants acknowledged that the deponents whom they selected needed to have knowledge about: "disseminating policy and/or guidance regarding the 2009 Parole Directive since September 5, 2019." ECF 90 at 3.

Messrs. Hodges and Ladwig both testified that they were appointed to their positions well after the September 2019 Order. Mr. Hodges stated that he started his position at the Winn Detention Facility in March 2020; while Mr. Ladwig testified that he did not have any responsibilities over the parole process at La Salle until July 2020. As the deposition transcript will show, both witnesses repeatedly testified that they did not have knowledge of the implementation of policies, guidance, and procedures at Winn and La Salle before they assumed their current positions well after the Court's September 2019 Order. Plaintiffs assert that it is only fair for Defendants to produce two additional deponents from the Winn and La Salle facilities who have actual knowledge of the implementation of policies, procedures, guidance and compliance with the September 2019 Order, during the relevant time period.

## B. Additional Documents

Plaintiffs ask the Court to instruct Defendants to produce the following documents – about which Plaintiffs learned during depositions – that are relevant to Defendant's compliance with this Court's September 2019 Order and the Parole Directive of 2009:

- The Parole Interview Questionnaire mentioned by Metoyer, which Defendants should have included as part of the parole file;

- Parole Interview Questionnaire mentioned by Hodges (may be the same document mentioned above), also part of the parole file;

- The HM Manual Spreadsheets provided monthly to Metoyer from each facility that he uses to compile Master HM spreadsheet, noted as Exhibit A in the Metoyer and Hodges depositions;

- Attendance rosters from trainings that are kept in the ordinary course of business, mentioned by Metoyer and Hodges in their depositions;

- Documents addressing ongoing training efforts, including communications post-January 2020 disseminating training materials;

- Training emails specifically mentioned by Metoyer, which he sends out monthly with a parole training power point;

- The Detainee Handbook (in multiple languages) that is kept in the ordinary course of business, as mentioned in the Metoyer and Hodges depositions;

- The Spreadsheet kept in the ordinary course of business that Mr. Hodges mentioned, used to track written requests from class members to DOs at Winn and other NOLA ICE facilities;

- The parole "file" or "folder" that supervisors receive when they review parole determinations – this file/folder includes <u>all the evidence</u> submitted by detainee; Defendants did not produce this file/folder as part of their response to Category 4 of the written discovery ordered by this Court;

- La Salle class members' written request forms soliciting a parole redetermination and the DO response to these redetermination requests, which should be a part of class members' files/folders and kept in the ordinary course of business, per Mr. Ladwig's deposition.

**C. Privilege Log and Redacted Documents**

On December 1, 2020, Plaintiffs emailed Defendants a list of items, including privilege log items requiring clarification, as well as a few redacted documents that were not on Defendants' privilege log. Defendants responded to all but four items that Plaintiffs raised as requiring clarification. Plaintiffs expect to address any concerns with respect to Defendants' assertion of privilege and redactions during the meet and confer.

Plaintiffs' requests for additional depositions and documents are all firmly within the scope of this Court's limited discovery Order. The two additional deposition seek to remedy the fact that

Defendants produced two deponents who did not have knowledge of the parole policies, guidance and compliance with the September 2019 Order for the requisite time period. With respect to the documents requested, Plaintiff is only asking for documents that should have been initially disclosed, as part of the parole files, and are kept in the ordinary course of business, therefore Defendants' production of these documents would not be onerous or burdensome, and would assist this Court in assessing compliance with the September 2019 Order and Parole Directive.

**Defendants Response to the Issues Raised by Plaintiffs**

    **A. Depositions**

Plaintiffs originally requested depositions from "at least one" deportation officer from each of the detention facilities within the New Orleans Field Office. Pursuant to the Defendants' objections at the time, the Court ordered that Plaintiffs pick two facilities, and the government designate "one" management person from each facility who is "knowledgeable about procedures followed at that facility." (July 23, 2020 Tr. at 19)  When this issue was addressed at the status hearing on July 23, 2020, Plaintiffs' counsel raised the issue of turnover and asked that Defendants identify witnesses who have been at the facility for a period of time, rather than merely "a month." (*Id*. at 20)  The Court directed that Defendants produce a witness for each facility "best able to speak to compliance since my injunction." (*Id.*)

Defendants have done so. Pursuant to the court's order, Defendants selected two deponents who are the individuals in management positions currently assigned to the two facilities picked by Plaintiffs and both deponents did in fact demonstrate knowledge about the procedures followed at those facilities regarding the parole directive and compliance with the September 5 Court order. Although, as a result of regular rotations among managers within the New Orleans Field Office, neither witness had been assigned to the designated facility for the

entire time period since the Court's September 5, 2019 order, each witness currently is assigned to the facility for which they were designated as a witness, and has maintained that assignment for at least several months. They were identified by the agency as best able to speak to compliance at these facilities as the Court directed.

Plaintiffs have not adequately explained what specific information they are missing from their nearly 14 hours of questioning of the two deponents. Both deponents explained the processes currently in place at the two facilities and demonstrated that the New Orleans Field Office has understood and implemented the September 5 order. In addition, to the extent these individuals had knowledge concerning compliance at other facilities (i.e., for instance because they had rotated among facilities during the period since the Court's September 5 order), Plaintiffs had the opportunity to question the witnesses about those other facilities as well, and did so (for instance, Mr. Ladwig served at the Jackson Parish facility until approximately January 2020 and was asked about training at that facility). Accordingly, Plaintiffs actually obtained information about procedures and compliance at more than the two facilities they designated. Accordingly, Plaintiffs have not established that further depositions are necessary.

In addition, there has been a regular rotation among managers at each of the facilities and it would not be practicable to produce as witnesses the various managers stationed at the two facilities at all times since September 5, 2020. Further depositions of any of these individuals would be overly burdensome given that Plaintiffs have used all or nearly all of the seven hours for each of the four depositions already conducted. Moreover, some of these individuals are likely not available for depositions (for instance, some have retired). The two individuals selected by Defendants and already deposed by Plaintiffs were the two individuals in the best

position to respond to the issues identified by the Court as the subject of this limited discovery with respect to the two facilities that had been identified.

### B. Documents

In the status report filed in July 2020, Plaintiffs identified the categories of documents that they wanted to be produced, Defendants provided their objections, and the Court resolved those issues. Defendants thereafter produced the documents in accordance with the Court's order, totaling several thousand pages. Plaintiffs raised the issue of obtaining additional documents beyond those permitted by the Court (to include categories of documents not previously identified by Plaintiffs in the July status report) during the status hearing on November 10, 2020. Defendants objected to such requests at that time, and the Court upheld those objections. For the same reason, Defendants object to Plaintiffs' request above for additional documents.

Moreover, the list of documents set forth above was not provided to Defendants until near close of business on January 4, 2021, the date of this report. Consequently, Defendants have not had an opportunity to consider the list in time to further respond for purposes of this status report. As noted below, the parties plan to confer on January 6, 2021 in an effort to try to narrow issues in dispute.

### C. Privilege Log

Defendants are working to address the limited, remaining issues that Plaintiffs have identified regarding the previously produced privilege log.

## Meet and Confer

The Parties plan to meet and confer on Wednesday, January 6, 2021, to discuss and attempt to narrow these remaining discovery issues.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. BAR # 924092
Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

Counsel for Defendants

    AND

MELISSA CROW (D.C. Bar #453487)
Senior Supervising Attorney

_____/s/_____
LUZ V. LOPEZ (*pro hac vice*)
Senior Supervising Attorney
**SOUTHERN POVERTY LAW CENTER**
1101 17th St., NW, 7th Floor
Washington, DC 20036
Tel: (202) 355-4471
melissa.crow@splcenter.org
luz.lopez@splcenter.org

VICTORIA MESA-ESTRADA (*pro hac vice*)
MICHELLE GONZALEZ (*pro hac vice*)
CHRISTINA LAROCCA (*pro hac vice*)
**SOUTHERN POVERTY LAW CENTER**
2 S BISCAYNE BLVD, STE 3200
MIAMI, FL 33101
**TEL: (**786) 347- 2056
victoria.mesa@splcenter.org
mich.gonzalez@splcenter.org


BRUCE HAMILTON (*pro hac vice*)
**AMERICAN CIVIL LIBERTIES UNION OF LOUISIANA FOUNDATION**
P.O. Box 56157
New Orleans, LA 70156
Tel: (504) 522-0628
kschwartzmann@laaclu.org
bhamilton@laaclu.org


Counsel for Plaintiffs