UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEREDIA MONS, et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>ALEJANDRO N. MAYORKAS,<br>Secretary of Homeland Security, et al.,<br><br>                Defendants. | Civil Action No. 19-1593 (JEB) |

## JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), the parties, by undersigned counsel, jointly move for preliminary approval of a class-action settlement agreement reached by the parties and which is attached hereto as Exhibit 1, Settlement Agreement.

## BACKGROUND

Plaintiffs filed the above-captioned lawsuit in May 2019, against certain officials with the United States Department of Homeland Security ("the Department") and its component, United States Immigration and Customs Enforcement ("ICE"). The Complaint was filed as a Class Action Complaint and sought to enjoin Defendants' alleged practice within ICE's New Orleans Field Office of categorically denying parole to asylum-seekers in contravention of Directive No. 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (hereinafter, "the 2009 Parole Directive") as violative of the Administrative Procedure Act ("APA"), and also alleging that Defendants violated both the APA and the Due Process Clause of the Fifth Amendment to the Constitution in allegedly failing to provide individualized

determinations in connection with the terms of the 2009 Parole Directive.  Defendants deny these allegations.

By order dated September 5, 2019, the Court, among other things, granted Plaintiffs' motion for preliminary injunction and granted Plaintiffs' motion for class certification on a provisional basis for purposes of the preliminary injunction.   By order dated January 9, 2020, the Court defined the provisionally certified class as follows: "(1) all arriving asylum seekers; (2) who receive positive credible fear determination; and (3) who are or will be detained by U.S. Immigration and Customs Enforcement after having been denied parole by the New Orleans ICE Field Office, including all those denied parole after September 5, 2019."

Pursuant to the Court's minute order dated October 7, 2019, and until that order was modified by order dated August 22, 2024, Defendants had been filing by the 24th of each month (or the next business day when the 24th was a weekend or holiday), monthly status reports accompanied by an agency declaration attaching spreadsheets of initial parole determination and parole re-determination data (the August 22, 2024 order changed the reporting to a quarterly basis).

In May 2020, Plaintiffs filed a Motion for Issuance to Show Cause, Expedited Discovery, and Appointment of Special Master, alleging that Defendants were not complying with the Court's September 5, 2019, order.  Defendants opposed that motion and denied that they had failed to comply with the September 5, 2019, order.  By order, dated July 22, 2020, the Court granted Plaintiffs' motion in part and denied it in part.  Specifically, the Court granted Plaintiffs' request for limited discovery but denied the motion in all other respects without prejudice, stating that the motion could be renewed following discovery and a potential hearing on Defendants' alleged violations.  Plaintiffs thereafter conducted limited discovery, but the parties continued to disagree as to whether further discovery was warranted.  On or about March 2021, while those issues

remained outstanding, the parties commenced settlement discussions which they pursued diligently for several years.

Those discussions ultimately resulted in the attached settlement agreement bearing a signature date of September 23, 2024 (the "Agreement").  Pursuant to paragraph 20(a) of the Agreement, the parties are jointly moving for a Preliminary Approval Order that would (a) preliminarily approve the Agreement and find it to be fair, just, reasonable, and adequate; (b) certify the Settlement Class in a manner consistent with the Court's January 9, 2020 provisional certification order; (c) approve the Class Notice to the Class Members attached as Exhibit A to the Agreement; and (d) set a Fairness Hearing to consider the Final Approval Order and any objections thereto.

## I.      The Court Should Certify the Settlement Class.

By order dated January 9, 2020, the Court defined the provisionally certified class as follows: "(1) all arriving asylum seekers; (2) who receive positive credible fear determination; and (3) who are or will be detained by U.S. Immigration and Customs Enforcement after having been denied parole by the New Orleans ICE Field Office, including all those denied parole after September 5, 2019."  Pursuant to Rule 23(e), the Court should certify a Settlement Class for purposes of the Settlement Agreement in a manner consistent with that January 9, 2020, order.

## II.     The Court Should Find That Approval of the Settlement Is Likely and Direct That Notice Be Provided to Class Members Under Rule 23(e).

Rule 23(e) requires court approval of a class-action settlement. This entails a "three-stage process, involving two separate hearings." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 189–90 (D.D.C. 2017) (cleaned up). Before the Court may approve a class-action settlement, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to

(i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, requires that the settlement be "fair, reasonable, and adequate." The first stage, then, is for the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms," *Ross*, 267 F. Supp. 3d at 194, a process often referred to as preliminary approval.

If the Court preliminarily approves the settlement, the next stage is to direct that notice be "sent to the class describing the terms of the proposed settlement and explaining class members' options with respect to the settlement agreement . . . including the right to object to the proposed settlement." *Id.* at 190.   The final stage involves a fairness hearing during which the Court examines the settlement and any objections to it, followed by a decision on whether to approve the settlement. *Id.*

This case is at the preliminary-approval stage. "Whether to preliminarily approve a proposed class action settlement lies within the sound discretion of the district court." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 482 (D.D.C. 2019). That discretion, however, "is constrained by the principle of preference favoring and encouraging settlement in appropriate cases." *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 16 (D.D.C. 2019).

The criteria guiding the preliminary-approval determination are supplied by Rule 23(e)(2), which requires consideration of whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate"; and "(D) the proposal treats class members equitably relative to each other." In considering these factors, the Court should also look to "the opinion of experienced counsel." *Stephens*, 329 F.R.D. at 486.   Each of these factors supports preliminary approval here.

**A.    Class Counsel Have Adequately Represented the Provisionally Certified Class.**

Class counsel have adequately represented the provisionally certified class.   Counsel for Plaintiffs include experienced counsel from the Southern Poverty Law Center and American Civil Liberties Union Foundation of Louisiana.  Counsel successfully litigated a motion for preliminary injunction, in which the class was provisionally certified, and continued to vigorously represent the provisionally certified class, as the docket of this action reflects.

**B.    The Agreement Was Negotiated at Arms-Length.**

The Agreement was negotiated at arms-length between Plaintiffs' counsel and counsel for the government.  The negotiations spanned a period of approximately three years and included numerous meetings among counsel over Zoom (or similar teleconferencing platforms) and exchanges of draft settlement documents.

**C.    The Relief Provided to the Class Is Adequate.**

The relief provided to the class is adequate.  Under the terms of the Agreement, the Defendants shall comply with the standards and procedures set forth in the 2009 Parole Directive until the 2009 Parole Directive is amended, modified, rescinded, superseded, or terminated, whichever occurs first.  Agreement (Ex. 1 hereto) ¶ 1.  The Agreement, moreover, shall remain in effect for two years from its effective date (defined as the date the Agreement is approved by the Court), or until the 2009 Parole Directive is amended, modified, rescinded, superseded, or terminated, whichever occurs first.  *Id.* ¶¶ 2, 17.

If within the two years following approval of the Settlement Agreement, ICE issues a new policy directive affecting class members, the successor policy will need to provide for: (1) upon finding of credible fear, ICE's consideration of parole of such "arriving aliens"; (2) for such "arriving aliens", parole, pending their section 240 removal proceedings, if the noncitizen

establishes that he or she is neither a flight risk nor a danger to the community, if release is warranted for an urgent humanitarian reason or to serve a significant public benefit, and if no additional factors weigh against the release of the noncitizen, such as serious adverse foreign policy consequences or overriding law enforcement interests;  (3) individualized determinations of the foregoing factors; and (4) written notification of decisions not to release.  *Id*. ¶ 3.

Separately, if parole is denied, the local ICE Enforcement and Removal Operations field office will provide an initial written denial to the noncitizen, and if represented, to the noncitizen's attorney of record. The written denial will provide a brief explanation for the reasons denying parole and a notification that the noncitizen may request redetermination based upon changed circumstances or additional evidence relevant to the noncitizen's identity, security risk, or risk of absconding.  The decision will be sent via e-mail whenever possible, and in the absence of an email address for the attorney of record, via traditional mailing. For detained individuals who are pro se, a copy of the denial will be provided to the noncitizen by the ICE staff at the respective facility in which they are detained. ICE will provide an oral translation of the denial to detained individuals who are pro se where those individuals cannot communicate effectively in English.  *Id*. ¶ 4.

Defendants will continue to provide periodic reporting to the Court from the New Orleans field office on a quarterly basis in the same format as has occurred during the pendency of the above-captioned action for the duration of the Settlement Agreement but not to exceed December 31, 2025.  *Id*. ¶ 5.  In addition, ICE Enforcement and Removal Operations will dedicate personnel at the headquarters level that will oversee implementation of the 2009 Parole Directive or any successor policy and work to ensure a consistent national application, including providing guidance to the field nationwide, ensuring sufficient training, and overseeing reporting.  ICE Enforcement and Removal Operations will also identify which process at the headquarters level

permits requests for review of denials to be decided, including designating an appropriate senior level position to render such decisions. *Id.* ¶ 8.

ICE, moreover, will implement compulsory, nationwide yearly online training on the 2009 Parole Directive, including a test component added at the end of the training for retention and absorption purposes, until such time as the 2009 Parole Directive is amended, modified, rescinded, or terminated, whichever occurs first. New hires will participate in this training within sixty (60) days of their start date. *Id.* ¶ 9. ICE also will send a broadcast message to the workforce reminding field offices of their obligations under the 2009 Parole Directive or any successor policy. *Id.* ¶ 10.

The New Orleans Field Office, for so long as the Settlement Agreement remains in effect, will provide notice of the Settlement Agreement to provisional class members by posting notice in each detention center where class members are detained and by providing written notice to individual detainees when they assume class-member status. Such notice shall be posted in the English, Spanish, Arabic, and Russian languages. *Id.* ¶ 11.

Finally, Defendants shall pay Plaintiffs the amount of $75,000 in full satisfaction of any claim for reasonable attorneys' fees and costs incurred in this matter, including attorneys' fees and costs incurred in connection with the final approval procedures set forth in paragraph 20 of the Agreement. This payment will be made in accordance with instructions provided by Plaintiffs' counsel. Counsel for Plaintiffs shall be responsible for allocating the payment among themselves and Plaintiffs. *Id.* ¶ 6.

In exchange for the above, Plaintiffs release any and all claims, demands, rights, and causes of action of whatsoever kind and nature (including any claim for attorney fees, litigation expenses, and/or costs) against Defendants, whether in their official or individual capacities, arising from, or related to, the subject matter that gave rise to the above-captioned lawsuit, including any

determinations made with respect to them under the 2009 Parole Directive.  Plaintiffs agree that no further suit will be instituted for the same causes of action that have been asserted herein or for any other causes of action arising out of the incidents or circumstances that gave rise to this suit, including any claims to attorneys' fees and costs.  *Id*. ¶ 13.  Plaintiff and Plaintiffs' counsel also agree and consent to Defendants' counsel filing a Stipulation of Dismissal with the Court at any time following expiration of the Settlement Agreement (as that term is defined in paragraph 2 of the Agreement), and that such filing shall constitute a dismissal of the above-captioned action with prejudice pursuant Rule 41(a)(1)(A)(ii).  Plaintiff also agree that the sole remedy for any material breach of the Settlement Agreement by a Defendant is the reinstatement of the claims asserted in the above-captioned action and that no claim for specific performance, injunctive relief, or mandamus shall lie against any Defendant to compel their compliance with the obligations set forth in this Settlement Agreement.  *Id*. ¶ 14.[1]  The Settlement Agreement provides that no class member may opt out of the Agreement.  *Id.* ¶ 20(e).

Accordingly, accounting for the costs, risks and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, and the terms of the proposed award of attorneys' fees, the relief provided to the class is adequate.  *See* Fed. R. Civ. P. 23(e)(2)(C).

---

[1]    This provision seeks to comply with Department of Justice settlement principles originally expressed in the March 13, 1986 Memorandum from then Attorney General Edwin Meese III to All Assistant Attorneys General and All United States Attorneys, available at  https://www.archives.gov/files/news/samuel-alito/accession-060-89-1/Acc060-89-1-box9-memoAyer-LSWG-1986.pdf (last visited Oct. 14, 2024).  The Meese Memorandum provided in relevant part that: "In any settlement agreement in which the Secretary or agency administrator agrees to exercise his discretion in a particular way, where such discretionary power was committed to him by Congress or the Constitution to respond to changing circumstances, to make policy or managerial choices, or to protect the rights of third parties, the sole remedy for the department or agency's failure to comply with those terms of the settlement agreement should be the revival of the suit."  *Id.* § II.B.2.  While the constitutional dimension of the Meese Memorandum was later clarified by the Department's Office of Legal Counsel, it remains a Department settlement principle to avoid inhibiting the exercise of agency discretion through settlements.  *See* 28 CFR § 0.160(d)(3), (5).

**D.     The Agreement Treats Class Members Equitably Relative to Each Other.**

As the above-described terms reflect, the Settlement Agreement also treats class members equitably relative to each other.  Accordingly, the Settlement Agreement satisfies the fourth consideration under Rule 23(e)(2).

**E.     Class Counsel Support the Settlement.**

The final relevant factor is not enumerated in the text of Rule 23, but it is well-settled in the case law. Under this Court's cases, "the opinion of experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Prince v. Aramark Corp.*, 257 F. Supp. 3d 20, 26 (D.D.C. 2017). Counsel for both parties "are clearly of the opinion that the settlement in this action is fair, adequate, and reasonable," which only further confirms its reasonableness. *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007).

**III.    <u>The Agreement Provides for Notice to the Settlement Class.</u>**

Due process requires that notice to class members be "reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank Tr. Co.*, 339 U.S. 306, 314 (1950). Rule 23(e)(1) similarly requires that notice be directed in a "reasonable manner to all class members who would be bound by the proposal." The proposed notice meets these requirements.

The proposed notice, which is attached as Exhibit A to the Settlement Agreement, summarizes the terms of the Agreement.  Pursuant to the Settlement Agreement, moreover, ICE will post the Class Notice for at least sixty days in each detention center where class members are detained at facilities within the jurisdiction of the New Orleans Field Office. The notice will be posted in the English, Spanish, Arabic, and Russian languages.  Agreement ¶ 20(c).  In addition, counsel for Plaintiffs will post the Class Notice for at least sixty days in a reasonably accessible

location on a website of the Southern Poverty Law Center and the American Civil Liberties Union Foundation of Louisiana.  *Id.*

## CONCLUSION

In light of the above, the parties jointly request that the Court preliminarily approve the Settlement Agreement; certify the Settlement Class; approve the Class Notice; direct the notice to be provided to the Class as proposed in section 20(c) of the Settlement Agreement; and schedule a Fairness Hearing.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. BAR #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   */s/ Jeremy S. Simon*
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

Counsel for the United States of America

AND

*/s/ Luz V. Lopez*
LUZ V. LOPEZ
D.C. BAR #1720589
SOUTHERN POVERTY LAW CENTER
1101 17th St., NW, 7th Floor
Washington, DC 20036
TEL: (404) 387-9314
Luz.Lopez@splcenter.org

CHRISTINA LAROCCA (pro hac vice)
SOUTHERN POVERTY LAW CENTER
2 S BISCAYNE BLVD, STE 3750

MIAMI, FL 33101
TEL: (786) 347- 2056
christina.larocca@splcenter.org

NORA AHMED
ACLU OF LOUISIANA
1340 Poydras Street
Suite 2160
New Orleans, LA 70112
(504) 522-0628
nahmed@laaclu.org

Counsel for Plaintiffs